NOURSE & BOWLES, LLP
Attorneys for Defendant
SGL SHIPPING LIMITED
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
CALDER SEACARRIER CORP.,                          :
                                                  :
                              Plaintiff,          :      **07 CV 6520 (LAK)**
                                                  :
           - against -                            :      **ECF CASE**
                                                  :
VIKING MARINE S.A. and SINORICHES                 :      **AFFIDAVIT**
GLOBAL LTD, a/k/a SGL SHIPPING                     :
LIMITED                                           :
                                                  :
                              Defendants.         :
--------------------------------------------------------------X

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK       )

        ARMAND M. PARÉ, JR., being duly sworn, deposes and says:

        1.      I am a member of the bar of this Honorable Court and a member of the firm of

Nourse & Bowles, LLP, attorneys for SGL Shipping Limited ("SGL Shipping") in this matter.

I make this affidavit in support of a motion on order to show cause and restricted appearance

under Supplemental Rules E(4)(f) and E(8) for Certain Admiralty and Maritime Claims

("Supplemental Rules") of the Federal Rules of Civil Procedure to vacate the attachments and

dismiss this action against SGL Shipping.

2.     Supplemental Rule E(4)(f) calls for a "prompt hearing" on an application to vacate maritime attachments. Local Admiralty and Maritime Rule E.1 provides that an adversary hearing following arrest or attachment under Supplemental Rule E(4)(f) shall be conducted by a judicial officer within three court days, unless otherwise ordered. Defendant, SGL Shipping's wire transfers in the presently known amounts of $568,092.32 and $81,041.22 have been attached on the apparent grounds that defendant Sinoriches Global Ltd. ("Sinoriches") is indebted to Plaintiff and Sinoriches is "a/k/a" SGL Shipping. As evidenced by the attachments, SGL Shipping has no connection with Sinoriches. Furthermore, the Amended Complaint on which these allegations were made, was not verified as required by Supplemental Rule B(1)(a). SGL Shipping therefore moves, on order to show cause, under Supplemental Rule E(4)(f) and Local Admiralty Rule E.1, for an order vacating the attachments and dismissing the case against it. No prior application for this relief has been made.

3.     Attached as Exhibit "A" is a copy of the First Amended Complaint alleging, on information and belief in the preamble, that Sinoriches is "a/k/a" SGL Shipping.

4.     Attached as Exhibit "B" is a declaration of Guoxian Yang of SGL Shipping made under penalty of perjury of the laws of the United States in accordance with 28 U.S. Code § 1746, together with its attached Exhibits "1"-"11".

Armand M. Paré, Jr.  (AP 8575)

Sworn to and subscribed to before
me this 17 day of October, 2007.

Notary Public     MARY T. BANNON
Notary Public, State of New York
No. 01BA4765995
Qualified In New York County
Commission Expires February 28, 2010

2

# Exhibit A

*Exhibit A*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CALDER SEACARRIER CORP.,

Plaintiff,

-against-

VIKING MARINE S.A. and SINORICHES

GLOBAL LTD, a/k/a SGL SHIPPING

LIMITED,

Defendants.

07 CV 6520 (LAK)

FIRST AMENDED COMPLAINT



**PLEASE TAKE NOTICE** that Plaintiff, CALDER SEACARRIER CORP., ("CALDER"), by its attorneys, MAHONEY & KEANE, LLP, as and for a Complaint against Defendants, VIKING MARINE S.A. ("VIKING") and SINORICHES GLOBAL LTD, a/k/a SGL SHIPPING LIMITED ("SINORICHES"), alleges, upon information and belief, as follows:

1.      This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is based upon 28 U.S.C. § 1333, as well as the Court's diversity, pendent, supplementary and ancillary jurisdiction.

2.      Plaintiff is a legal entity duly organized and existing pursuant to the laws of a foreign country.

3.      Defendant VIKING is a business entity organized and existing pursuant to the laws of a foreign country with offices and a place of business located at c/o PRIAMOS MARITIME S.A., 72-74, Marathonos Str., 16673 Panorama Voulas, Athens, Greece.

4.      Defendant SINORICHES is a business entity organized and existing pursuant to

the laws of a foreign country.

## AS AND FOR CLAIMS AGAINST DEFENDANT VIKING

5.    On or about June 6, 2007, Plaintiff, as charterer, and Defendant VIKING, as owner, entered into a charter agreement for the use of the M/V VERA.

6.    Plaintiff complied with each and every requirement imposed by the agreement between the parties.

7.    Defendant VIKING wrongfully, willfully, negligently and/or fraudulently breached the terms of the subject charter agreement by, *inter alia*, failing to provide the said vessel, as per the terms of the charter agreement.

8.    Defendant VIKING wrongfully, willfully, negligently, and/or fraudulently interfered with Plaintiff's right to enter into contracts relating to the use of the M/V VERA

9.    As a result of Defendant's breach of the subject charter agreement and tortuous interference with Plaintiff's right to contract, Plaintiff has incurred, and will continue to incur, costs and expenses for which Defendant is liable under the terms of the charter agreement and at law.

10.    Plaintiff has placed Defendant on notice of its claim that Defendant has breached the subject charter agreement and violated Plaintiff's rights under the law.

11.    Despite Plaintiff's repeated demands, Defendant has failed to pay the Plaintiff's damages due and owing under the charter agreement and at law.

12.    Pursuant to the charter agreement, disputes are to be settled by arbitration, and arbitration between Plaintiff and Defendant is underway, accordingly.

13.    Under the rules of such arbitration, interest, costs, and attorneys' fees are routinely awarded to the prevailing party.

14.    As a result of Defendant's breach of the charter agreement and violation of Plaintiff's rights under the law, Plaintiff has sustained damages, and, as best as can now be estimated, Plaintiff expects to recover the following amounts, exclusive of interest, by way of arbitral award:

| Principal Claim | $721,286.31 |
| Attorneys' and Expert's Fees, | $250,000.00 |
| Arbitration Expenses | $100,000.00 |
| **Total** | **$1,071,286.31** |

15.     Plaintiff notes that the above claim figures constitute estimates derived from the information currently available and reserves the right to amend or adjust same in the event that newly discovered facts demand such amendment.

16.     Plaintiff sues on its own behalf and as agent and trustee on behalf of any other party who may now have or hereinafter acquire an interest in this action.

17.     All conditions precedent required of Plaintiff in the aforesaid charter agreement have been performed.

### AS AND FOR A CLAIM AGAINTS DEFENDANT SINORICHES

18.     On or about June 7, 2007, Plaintiff, as entitled to do so under its Charter with VIKING, and Defendant SINORICHES, as shipper, entered into a contract of affreightment ("fixture agreement") for the shipment of a cargo of steel products on board the M/V VERA.

19.     Plaintiff complied with each and every requirement imposed by the agreement between the parties.

20.     Defendant SINORICHES wrongfully, willfully, negligently and/or fraudulently breached the terms of the subject contract of affreightment by, *inter alia,* failing to pay freight, demurrage, port fees and other associated costs.

21.     As a result of Defendant's breach of the fixture agreement Plaintiff has incurred, and will continue to incur costs and expenses for which Defendant is liable under the terms of the charter agreement and at law.

22.     Plaintiff has placed Defendant on notice of its claim that Defendant has breached the subject fixture agreement and violated Plaintiff's rights under the law.

23.     Despite Plaintiff's repeated demands, Defendant has failed to pay the Plaintiff's

damages due and owing under the contract of affreightment and at law.

24.     Pursuant to the contract of affreightment, disputes are to be settled by arbitration, and arbitration between Plaintiff and Defendant has been commenced or will shortly be commenced.

25.     Under the rules of such arbitration, interest, costs, and attorneys' fees are routinely awarded to the prevailing party.

26.     As a result of Defendant's breach of the fixture agreement and violation of Plaintiff's rights under the law, Plaintiff has sustained damages, and, as best as can now be estimated, Plaintiff expects to recover the following amounts, exclusive of interest, by way of arbitral award:

| | |
|---|---|
| Principal Claim | $1,600,684.00 |
| Attorneys' and Expert's Fees, | $250,000.00 |
| Arbitration Expenses | $100,000.00 |
| **Total** | **$1,950,684.00** |

27.     Plaintiff notes that the above claim figures constitute estimates derived from the information currently available and reserves the right to amend or adjust same in the event that newly discovered facts demand such amendment.

28.     Plaintiff sues on its own behalf and as agent and trustee on behalf of any other party who may now have or hereinafter acquire an interest in this action.

29.     All conditions precedent required of Plaintiff in the aforesaid contract of affreightment have been performed.

### AS AND FOR ALLEGATIONS IN SUPPORT OF RULE B ATTACHMENT

30.     Defendants VIKING and SINORICHES cannot be found, within the meaning of Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims, within this District, but, upon information and belief, Defendants have or will have during the pendency of this action, assets within this District and subject to the

jurisdiction of this Court held in the hands of garnishees including, but not limited to, Bank of America, Bank of New York, Citibank, HSBC Bank USA N.A., J.P. Morgan Chase, Standard Chartered Bank, Siam Commercial Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V. and/or DBS Bank Ltd, which are believed to be due and owing to Plaintiff.

      31.     For the purpose of obtaining personal jurisdiction over Defendants and securing Plaintiff's claim as described above, Plaintiff seeks and order from this Court directing the Clerk of the Court to issue process of maritime attachment and garnishment pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching any assets, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit freights, sub-freights, charter hire, sub-charter hire, and/or other assets belonging to, due or for the benefit of Defendants, including but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to the aforesaid garnishees and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served.

      **WHEREFORE, Plaintiff prays:**

      A.     That process in due form of law issue against Defendants VIKING and SINORICHES, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

      B     That, since Defendants cannot be found in this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, the Court directs the Clerk of the Court to issue an order, pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including but not limited to the Bank of America, Bank of New York, Citibank, HSBC Bank USA N.A., J.P. Morgan Chase,

Standard Chartered Bank, Siam Commercial Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., DBS Bank Ltd., and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served, in the amount of **$1,071,286.31 (VIKING)** and **$1,950,684.00 (SINORICHES)** to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and answer the matters alleged in the Complaint;

        C.     That the Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

        D.     That Plaintiff has such other and further relief as this Honorable Court may deem just and proper.

Dated: New York, NY

        August _/_, 2007

                        Respectfully submitted,

                        MAHONEY & KEANE, LLP.
                        Attorneys for Plaintiff
                        **CALDER SEACARRIER CORP.**

By:

                        Garth S. Wolfson (GW 7700)
                        111 Broadway, 10th Floor
                        New York, NY 10006
                        Tel. (212) 385-1422
                        Fax (212) 385-1605
                        Our File No. 12/3437

## SERVICE LIST

VIKING MARINE S.A.
c/o PRIAMOS MARITIME S.A., 72-74,
Marathonos Str., 16673 Panorama Voulas,
Athens, Greece

SINORICHES GLOBAL LTD a/k/a SGL
SHIPPING LIMITED

# Exhibit B

## DECLARATION

Mr. Guoxian Yang states:

1.      I am the General Manager of SGL Shipping Limited ("SGL Shipping"). I read and speak English and have prepared this declaration, based on my own knowledge, with the help of SGL shipping's attorneys including assistance with English translations.

2.      SGL Shipping is incorporated under the laws of Hong Kong and has offices and bank accounts there and in Mainland China. SGL Shipping is a small business. It has four employees: myself, Mr. Shen Huawei, Ms. Lin Ling and Ms. Zheo Xia. Three of us are co-managers of the company, Mr. Shen Huawei, myself (Guoxian Yang) and Ms. Lin Ling. The origin of the name SGL Shipping comes from our names (Shen, Guoxian and Lin).

3.      SGL Shipping has 3 main types of business. First, SGL Shipping enters into charter parties as a principal. Second, SGL Shipping acts as broker in chartering of vessels by others. Third, SGL Shipping acts as agent for other companies in the transfer of foreign exchange payments as part of its normal daily business.

4.      Two examples of SGL Shipping entering into charter parties as principal is (1) the charter party fixture note dated July 17, 2007 between SGL Shipping, as disponent owner, and Virgil Honesty (HK) Enterprises Co. Ltd., as charterer, for part cargo on the vessel M/V SALAMANCA attached as Exhibit "1" and (2) charter party fixture note between SGL Shipping, as disponent owner, and Steelforce Far East Ltd., as charterer, of another part cargo on same vessel attached as Exhibit "2".

5.    Another business of SGL Shipping is acting as agent for transfer of foreign exchange funds. Payment of freight and other amounts by foreign exchange payments to international shipping companies is restricted in China. Chinese cargo interests, for example, cannot generally send foreign exchange payments freely at any time, unless two requirements are satisfied, namely, a. the owners of goods shall be authorized by Ministry of Foreign Economic Trade to conduct import and export operations; b. the owners of goods shall provide such documents to banks, viz application for funds transfers (overseas), original freight invoice, relevant charter party, original bill of lading and taxation certificate.

The foregoing requirements usually cause inconvenient and troublesome to owners of goods, since the payment together with the above documents shall be checked and approved by designated banks dealing with foreign exchanges. The procedure of examination is complex and strict, and consequently will take some time for owners of goods to rectify their documents or information in case the bank considers it wrongful or improper. Also, owners of goods are eager to obtain bills of lading as soon as possible, therefore, in practice, more owners of goods would like to pay freight through their agent or broker to save time ahead, and then reimburse the fund together with commission. Usually, such funds may be sent through companies like SGL Shipping who are incorporated and have bank facilities outside Mainland China.    Transfer of foreign exchange payments for others by companies like SGL Shipping is therefore a normal daily business activity. Attached as Exhibit "3" are examples of SGL Shipping acting for various companies in transferring funds.

GUOXIAN YANG

6.      I understand Calder Seacarrier Corp. ("Calder") claims in its First Amended Complaint (Exhibit "4") that it is owed $1,950,684 by Sinoriches Global Ltd. ("Sinoriches") on a fixture agreement for the vessel M/V VERA. I also understand Calder claims that Sinoriches and SGL Shipping are a single company operating under two different names. This is not true. SGL Shipping has no corporate relationship either directly or indirectly with Sinoriches. SGL Shipping has never gone by the name of Sinoriches. Sinoriches, a company known to me, has never gone by the name of SGL Shipping and Calder's allegation that Sinoriches is also known as SGL Shipping is incorrect.

7.      In the case of the M/V VERA, SGL Shipping became involved but not for Sinoriches. The M/V VERA was subchartered by a booking note from Sinoriches, as owner, to Shanghai Fareast International Shipping Co., Ltd. ("Shanghai Fareast"), as charterer. The booking note is attached as Exhibit "5". Shanghai Fareast requested that SGL Shipping arrange freight payments, which is part of SGL Shipping's normal and routine business, to the owners of that vessel. I understand Shanghai Fareast had been asked by Sinoriches to pay some of the booking note freight directly to the vessel owners and the balance directly to Sinoriches. Again this transfer of funds by SGL Shipping on behalf of Shanghai Fareast to the owners of the M/V VERA in Greece is a routine business event for SGL Shipping which acts for many companies to transfer funds in this way.

8.      Calder has attached a wire transfer of $568,118.32 made by SGL Shipping because of the Calder claim against Sinoriches. In that wire transfer, SGL Shipping acted

in its normal role as transfer agent (SGL also acted as a limited type of broker in that charter by introducing the parties but not getting involved in fixture negotiations) for BTB International Trading & Transportation Co. Ltd. ("BTB International") who chartererd the PARADISE ISLAND from Allied Maritime Inc. as owner. BTB International requested SGL Shipping to transfer a freight payment in the amount of $568,118.32 to Allied Maritime Inc. in Athens, Greece. Attached is Exhibit "6" the BTB International/Allied Maritime charter party fixture. Attached as Exhibit "7" is a copy of the BTB/Allied freight invoice. Attached as Exhibit "8" is a copy of PARADISE ISLAND mate receipts showing shipper of cargo as Dalian Dongzhan Group Co. Ltd. and notify party as Productos de Acero Cassado S.A. BTB International is a Chinese company located in Shanghai and asked SGL Shipping to transfer payments. Since SGL Shipping was the originator of this wire transfer, these funds were seized by Calder for its claim against Sinoriches. BTB has not reimbursed SGL Shipping for its attempted payment of these funds and therefore SGL Shipping has lost use of the funds because of the Calder attachment. There is no connection between the PARADISE ISLAND transfer (and parties to that charter) and Sinoriches.

9. SGL Shipping received Exhibit "9" from Calder's attorneys advising that Calder has restrained this PARADISE ISLAND transfer in the amount of $568,092.32. This is the above wire transfer by SGL Shipping for BTB International with $26 deducted as a banking charge.

10. In addition to attachment of $568,092.32, attorneys for Calder have advised they have attached a further transfer of $81,041.22 to SGL Shipping (Exhibit "10"). This

amount was being transferred to SGL Shipping as freight payment from Steel Force Far East Ltd. for the charter fixture contained in Exhibit "2" in which SGL Shipping is disponent owner. Attached as Exhibit "11" is a copy of the freight invoice for this $81,041.22 freight payment. Again, this charter and freight payment (and parties to charter) have nothing to do with Sinoriches and SGL Shipping have lost use of these funds.

11.    SGL Shipping has no business dealings with New York.

12.    In conclusion, there is no direct or indirect corporate relationship between SGL Shipping and Sinoriches. There is also no connection between the freight payment for the PARADISE ISLAND made by SGL Shipping for BTB International of $568,092.32 (and parties to that charter) and Sinoriches and this transfer has been improperly attached by Calder. There is also no connection between the freight payment of $81,041.22 made by Steel Force Far East Ltd. to SGL Shipping on the SALAMANCA charter fixture which has also been improperly attached by Calder. SGL Shipping submits there is no basis for any claim that SGL Shipping and Sinoriches are related companies or the same company with two names and the order of attachment which treats them as the same company and the above attached amounts should be vacated so that SGL Shipping can continue its normal business both as transfer agent and as principal in charter parties receiving freight which is now seriously disrupted.

13.    Due to the wrongful attachment of Calder, SGL has suffered tremendous losses. For instance, SGL not only lost the use of funds attached, but also faced the risk of making the payment of equivalent freight once more. SGL has also lost many business

opportunity caused by attachment since many clients consider it unsafe for SGL to arrange remittance acting for them or do business with them.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

GUOXIAN YANG
Guoxian Yang

Dated: Shanghai, China
October 12 . 2007

# Exhibit 1
## *(Yang Declaration)*

*Exhibit 1*
*(Yang Declaration)*

FROM :                          FAX NO. :                          Jul. 19 2004 20:41    P1

## FIXTURE    NOTE

The following shipment has been agreed today july 17, 2007 between the undersigned parties messrs "VIRGILHONESTY(HK) ENTERPRISES CO., LTD"as charterers and    Messr "SGL SHIPPING LIMITED" as owner :

Performing vsl        : M/V Salamanca
                         SDBC
                         Panama Flag Built 2000
                         46,743 MT Dwt on 11.671 M ssw
                         Loa/Beam: 183.0M / 31.0M
                         GRT 26,084 / NRT 15,577
                         A.D.A

*For and on behalf of*
VIRGILHONESTY (HK) ENTERPRISES CO., LIMITED
鏈 程 ( 香 港 ) 企 業 有 限 公 司

...................... ...................................................
                         *Authorized Signature(s)*

tor

- - -  fixture, negos to be kept strictly pivate & confidential

       Cargo:   Light Narrow Rails abt 85mt, 8-10m, 40bundles, 20cbm
                 StY R-Bar 150-190mt, no more than11.5m, 50-70cbm

             TTL: 230-280mt, 70-90cbm

             part cargo allowed ,under deck stowage allowed

    = 1 SPB Xingang , China / 1 SPB Callao ,Peru
       owners berth    bends

    = laycan : 25/JULY—5/AUG 2007

    = CQD loading n discharge

    = If at loading / discharging Port/s the vessel, having arrived, is unable to load / discharge due to shippers / receivers / their agents cargo documentation not being ready or in order or the shipper / receiver / their agents are unable to deliver / receive the said cargo, then any time lost to be for Charterers account and detention will accrue and fall due day by day at the rate of USD 35000 per day, pro rata and shall be paid within 3 days after presentation of owners invoice

    = Owners agents bends

    = taxes/dues/charges/wharfages if any on cgo/docs Chrs'
       acct bends, same on vsl/flag/crew/ frt ownership
       Ows' acct bends

         = frt USD90/mt F.I.L.O under hook BSS1/1

       Freight payable in USD in
       full less comm, within 5 ( five ) banking days after compl of loading





FROM :                        FAX NO. :                    Jul. 19 2004 20:42    P2

upon signing/releasing Bs/L marked 'freight
payable as per C/P',
Should Chrs require 'freight prepaid' Bs/L, same
to be released upon confirmation from tne Chrs'
Bank that the frt has been fully and irrevocably
Transferred
full frt deemed earned discountless non -returnable
upon compl loading, vsl and/or cgo lost or not lost

= lashing/separation/dunnage matieral /time to be for Charterer's acct

= Cargo to be delivered to vessel as fast as vessel can receive. and taken away from the
vessel as fast as vessel can deliver, otherwise detention clause apply

=Shipside tally if any tobe for owners account , shoreside tally if any tobe for charterer's
accoun

= GA/ARBLondon, English law to apply. Short
procedure for claims under USD 50.000.-

= proven force-majeure to be mutually accepted by
Owners and Chrs

= Owners/vsl to be free from any ex ins premium on her age

= otherwise as per gencon 94 , only with logical amendements

= comm.: 3.75% to virgilhonesty

+ e n d +

For and on behalf of charterer
VIRGILHONESTY (HK) ENTERPRISES
CO.,LTD.( 華 ) 企 業 有 限 公 司

.............................................
       Authorized Signature(s)

For and on behalf of owner
SGL SHIPPING LIMITED

# Exhibit 2
## (Yang Declaration)

*Exhibit 2*
*(Yang Declaration)*

## FIXTURE    NOTE

郑松

NO.SGL20070719006

The following shipment has been agreed today July 19, 2007 between the undersigned parties messrs "STEELFORCE FAR EAST LTD"as charterers and   Messr " SGL Shipping Limited" as owner :

Performing vsl      : Mv SALAMANCA
Paname Flag Built 2000
45,743 MT Dwt on 11.671 M s.sw
Loa/Beam: 183.0M / 31.0M
GRT 26,094 / NRT 15,577
Speed abt 13.5 Knots
Grain 59,977.36 / Bale 58,014.01
5 Ho/ 5 Ha
Cranes 4 x 30 tons
All about

for

- fixture, negos to be kept strictly pivate & confidential

   Cargo: 200mt steel plate, 5% MOLCO,     6m×2.5m

part cargo allowed ,under deck stowage only

   =1 GSB NANJING,CHINA/ 1 GSB BUENAVENTURA , COLOMBIA

   = laycan :26-30/JULY   2007

= CQD loading n discharge

= If at loading / discharging Port/s the vessel, having arrived, is unable to load / discharge due to shippers / receivers / their agents cargo documentation not being ready or in order or the shipper / receiver / their agents are unable to deliver / receive the said cargo, then any time lost to be for Charterers account and detention will accrue and fall due day by day at the rate of USD 35000 per day, pro rata and shall be paid within 3 days after presentation of owners invoice

= Owners agents bends

= taxes/dues/charges/whorfages if any on cgo/docs Chrs'
   acct bends, same on vsl/flag/crew/frt ownership
   Ows' acct bends

   = frt USD 88 PER MT FILO UNDER HOOK BSS1/1

Freight payable in USD in
full less comm within 5 ( five ) banking days after compl of loading

Steel Force Far East Ltd.

" 2 "

upon signing/releasing Bs/L marked 'freight
payable as per C/P'.
Should Chrs require 'freight prepaid' Bs/L, same
to be released upon confirmation from the Chrs'
Bank that the frt has been fully and irrevocably
Transferred
full frt deemed earned discountless non -returnable
upon compl loading, vsl and/or cgo lost or not lost

= lashing/separation/dunnage matieral /time to be for Charterer's accf

= Cargo to be delivered to vessel as fast as vessel can receive, and taken away from the
vessel as fast as vessel can deliver,otherwise detention clause apply

=Shipside tally if any tobe for owners account , shoreside tally if any tobe for charterer's
accoun

= GA/ARBLondon, English law to apply. Short
procedure for claims under USD 50,000,-

= proven force-majeure to be mutually accepted by
Owners and Chrs

= Owners/vsl to be free from any ex ins premium on her age

= otherwise as per genc:n 94 , only with logical amendements

+ e n d +

For and on behalf of charterer                    For and on behalf of owner
STEELFORCE FAR EAST LTD                           SGL Shipping Limited

# Exhibit 3
## *(Yang Declaration)*

*Exhibit 3*
*(Yang Declaration)*

Ø 004

DEUTSCHE BANK TRUST COMPANY AMERICAS NEW YORK

CHED BKTRUSG3Y

STAVRIC SAGE KEVIN LIMITED
SWIFT SHACKEAN

DenTrACUS, NL -

"3"

APPLICATION FOR FUNDS TRANSFER (OVERSEAS)

| 72A | 汇款币种及金额 Currency & Interbank Settled Amount | USD 813,704 | 金额 大写 | |
|---|---|---|---|---|

50a | 汇款人名称及地址 Remitter's Name & Address | SML SHIPPING CO., LTD |

| 53a | 收款银行之代理行 名称及地址 Correspondent of Beneficiary's Bank Name & Address | HSBC  BANK  USA |
| | SWIFT: MRMDUS33 | |

| 57a | 收款人开户银行 Beneficiary's Bank Name & Address | HSBC  BANK  PLC 93  AKTI MIAOULI, PIRAEUS BRANCH, GREECE |
| | SWIFT: MIDIGRAA  IBAN: GR 657100 |

| 59a | 收款人名称及地址 Beneficiary's Name & Address | 收款人账号 Benef's A/C No. GR 6571710000008811716 |
| | | ALLIED  MARITIME  INC |

| 70 | 汇款附言 Remittance Information | 只限140个字符 Not Exceeding 140 Characters | M/V  ATLANTICA |

73A 国内外费用承担 All Bank's Charges If Any Are To Be Borne By

收款人常驻国家（地区）名称及代码 Resident Country/Region Name & Code

| | 预付货款 Advance Payment | 货到付款 Payment Against Delivery | 退款 Refund | 其他 Other |

| 是否进口收付项 USD806.06 | | CON  IN  USD6.06 |
| 外汇局批件号 2515.00 | 报关单号 CON |

043-457-1-00053   USD804.25

ALLIED MARITIME INC

| 50 | 汇款人名称及地址<br>Remitter's Name & Address | SQH SHIPPING LIMITED | | |
| | 单位代码 Unit Code | | 中国居民个人 Resident Individual □   中国非居民个人 Non-Resident Individual □ |

| 51 | 收款人开户行之代理行<br>Beneficiary's<br>Bank Name & Address | | |
| 57 | 收款人开户银行<br>Beneficiary's Bank Name | BANK OF CHINA YINKOU BAYUQUANBRANCH<br>SWIFT BKCHCNBJ5Y0 | |
| 59 | 收款人名称及地址<br>Beneficiary's Name & Address | 收款人账号 Bene's A/C No. C318JX203031V<br>YINGKOU – HARBOR INTERNATIONAL SHIPPING AGENCY-CTD | |
| 70 | 附言<br>Remittance Information | 请勿超过140个字符 Not Exceeding 140 Characters<br>W/SEA RIOSS BAYUQUAN PORT PORTUGAL | 71A 国内外费用承担<br>All Bank's Charges If Any Are To Be Borne By<br>□ 我方 OUR  □ 他方 BEN  □ 共同 SHA |

| 本笔付款性质选择: □ 预付货款 Advance Payment | | □ 货到付款 Payment Against Delivery | □ 退款 Refund | □ 其他 Others |

| 交易编码<br>Buz' Type Code  XM0C09 | 1 - 22 05G 7992.09 | | | |
| 邮电费/POSTAGE  USD15.00 | | 其它费用 OTHER CON | USD30.00 | |
| 报关单号 AC# 047-457-1-00063 | | | | |

第三联 核销主体留存联

# Exhibit 4
## *(Yang Declaration)*

*Exhibit 4*
*(Yang Declaration)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CALDER SEACARRIER CORP.,

          Plaintiff,

       -against-

VIKING MARINE S.A. and SINORICHES

GLOBAL LTD, a/k/a SGL SHIPPING

LIMITED,

          Defendants.

07 CV 6520 (LAK)

FIRST AMENDED COMPLAINT



RECEIVED
AUG 0 7 2007
U.S.D.C. S.D. N.Y.
CASHIERS

PLEASE TAKE NOTICE that Plaintiff, CALDER SEACARRIER CORP., ("CALDER"), by its attorneys, MAHONEY & KEANE, LLP, as and for a Complaint against Defendants, VIKING MARINE S.A. ("VIKING") and SINORICHES GLOBAL LTD, a/k/a SGL SHIPPING LIMITED ("SINORICHES"), alleges, upon information and belief, as follows:

      1.    This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is based upon 28 U.S.C. § 1333, as well as the Court's diversity, pendent, supplementary and ancillary jurisdiction.

      2.    Plaintiff is a legal entity duly organized and existing pursuant to the laws of a foreign country.

      3.    Defendant VIKING is a business entity organized and existing pursuant to the laws of a foreign country with offices and a place of business located at c/o PRIAMOS MARITIME S.A., 72-74, Marathonos Str., 16673 Panorama Voulas, Athens, Greece.

      4.    Defendant SINORICHES is a business entity organized and existing pursuant to

" 4 "

the laws of a foreign country.

## AS AND FOR CLAIMS AGAINST DEFENDANT VIKING

5.    On or about June 6, 2007, Plaintiff, as charterer, and Defendant VIKING, as owner, entered into a charter agreement for the use of the M/V VERA.

6.    Plaintiff complied with each and every requirement imposed by the agreement between the parties.

7.    Defendant VIKING wrongfully, willfully, negligently and/or fraudulently breached the terms of the subject charter agreement by, *inter alia*, failing to provide the said vessel, as per the terms of the charter agreement.

8.    Defendant VIKING wrongfully, willfully, negligently, and/or fraudulently interfered with Plaintiff's right to enter into contracts relating to the use of the M/V VERA

9.    As a result of Defendant's breach of the subject charter agreement and tortuous interference with Plaintiff's right to contract, Plaintiff has incurred, and will continue to incur, costs and expenses for which Defendant is liable under the terms of the charter agreement and at law.

10.    Plaintiff has placed Defendant on notice of its claim that Defendant has breached the subject charter agreement and violated Plaintiff's rights under the law.

11.    Despite Plaintiff's repeated demands, Defendant has failed to pay the Plaintiff's damages due and owing under the charter agreement and at law.

12.    Pursuant to the charter agreement, disputes are to be settled by arbitration, and arbitration between Plaintiff and Defendant is underway, accordingly.

13.    Under the rules of such arbitration, interest, costs, and attorneys' fees are routinely awarded to the prevailing party.

14.    As a result of Defendant's breach of the charter agreement and violation of Plaintiff's rights under the law, Plaintiff has sustained damages, and, as best as can now be estimated, Plaintiff expects to recover the following amounts, exclusive of interest, by way of arbitral award:

| | |
|---|---|
| Principal Claim | $721,286.31 |
| Attorneys' and Expert's Fees, | $250,000.00 |
| Arbitration Expenses | $100,000.00 |
| **Total** | **$1,071,286.31** |

15.    Plaintiff notes that the above claim figures constitute estimates derived from the information currently available and reserves the right to amend or adjust same in the event that newly discovered facts demand such amendment.

16.    Plaintiff sues on its own behalf and as agent and trustee on behalf of any other party who may now have or hereinafter acquire an interest in this action.

17.    All conditions precedent required of Plaintiff in the aforesaid charter agreement have been performed.

<u>AS AND FOR A CLAIM AGAINTS DEFENDANT SINORICHES</u>

18.    On or about June 7, 2007, Plaintiff, as entitled to do so under its Charter with VIKING, and Defendant SINORICHES, as shipper, entered into a contract of affreightment ("fixture agreement") for the shipment of a cargo of steel products on board the M/V VERA.

19.    Plaintiff complied with each and every requirement imposed by the agreement between the parties.

20.    Defendant SINORICHES wrongfully, willfully, negligently and/or fraudulently breached the terms of the subject contract of affreightment by, *inter alia,* failing to pay freight, demurrage, port fees and other associated costs.

21.    As a result of Defendant's breach of the fixture agreement Plaintiff has incurred, and will continue to incur costs and expenses for which Defendant is liable under the terms of the charter agreement and at law.

22.    Plaintiff has placed Defendant on notice of its claim that Defendant has breached the subject fixture agreement and violated Plaintiff's rights under the law.

23.    Despite Plaintiff's repeated demands, Defendant has failed to pay the Plaintiff's

damages due and owing under the contract of affreightment and at law.

24.     Pursuant to the contract of affreightment, disputes are to be settled by arbitration, and arbitration between Plaintiff and Defendant has been commenced or will shortly be commenced.

25.     Under the rules of such arbitration, interest, costs, and attorneys' fees are routinely awarded to the prevailing party.

26.     As a result of Defendant's breach of the fixture agreement and violation of Plaintiff's rights under the law, Plaintiff has sustained damages, and, as best as can now be estimated, Plaintiff expects to recover the following amounts, exclusive of interest, by way of arbitral award:

| Principal Claim | $1,600,684.00 |
| Attorneys' and Expert's Fees, | $250,000.00 |
| Arbitration Expenses | $100,000.00 |
| Total | $1,950,684.00 |

27.     Plaintiff notes that the above claim figures constitute estimates derived from the information currently available and reserves the right to amend or adjust same in the event that newly discovered facts demand such amendment.

28.     Plaintiff sues on its own behalf and as agent and trustee on behalf of any other party who may now have or hereinafter acquire an interest in this action.

29.     All conditions precedent required of Plaintiff in the aforesaid contract of affreightment have been performed.

### AS AND FOR ALLEGATIONS IN SUPPORT OF RULE B ATTACHMENT

30.     Defendants VIKING and SINORICHES cannot be found, within the meaning of Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims, within this District, but, upon information and belief, Defendants have or will have during the pendency of this action, assets within this District and subject to the

jurisdiction of this Court held in the hands of garnishees including, but not limited to, Bank of America, Bank of New York, Citibank, HSBC Bank USA N.A., J.P. Morgan Chase, Standard Chartered Bank, Siam Commercial Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V. and/or DBS Bank Ltd, which are believed to be due and owing to Plaintiff.

31.    For the purpose of obtaining personal jurisdiction over Defendants and securing Plaintiff's claim as described above, Plaintiff seeks and order from this Court directing the Clerk of the Court to issue process of maritime attachment and garnishment pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching any assets, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit freights, sub-freights, charter hire, sub-charter hire, and/or other assets belonging to, due or for the benefit of Defendants, including but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to the aforesaid garnishees and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served.

WHEREFORE, Plaintiff prays:

A.    That process in due form of law issue against Defendants VIKING and SINORICHES, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That, since Defendants cannot be found in this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, the Court directs the Clerk of the Court to issue an order, pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including but not limited to the Bank of America, Bank of New York, Citibank, HSBC Bank USA N.A., J.P. Morgan Chase,

Standard Chartered Bank, Siam Commercial Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., DBS Bank Ltd., and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served, in the amount of **$1,071,286.31 (VIKING) and $1,950,684.00 (SINORICHES)** to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and answer the matters alleged in the Complaint;

   C. That the Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

   D. That Plaintiff has such other and further relief as this Honorable Court may deem just and proper.

Dated: New York, NY

  August ___/___, 2007

       Respectfully submitted,

       MAHONEY & KEANE, LLP.
       Attorneys for Plaintiff
       **CALDER SEACARRIER CORP.**

By: _____

       Garth S. Wolfson (GW 7700)
       111 Broadway, 10th Floor
       New York, NY 10006
       Tel. (212) 385-1422
       Fax (212) 385-1605
       Our File No. 12/3437

## SERVICE LIST

VIKING MARINE S.A.
c/o PRIAMOS MARITIME S.A., 72-74,
Marathonos Str., 16673 Panorama Voulas,
Athens, Greece

SINORICHES GLOBAL LTD a/k/a SGL
SHIPPING LIMITED

# Exhibit 5
## *(Yang Declaration)*

*Exhibit 5*
*(Yang Declaration)*

06/08 07  FRI 14:00 FAX

@001

# SHANGHAI FAREAST INT'L SHIPPING CO.,LTD
## ROOM1001,NO.133 TIANTONG ROAD,SHANGHAI,P.R.CHINA

## BOOKING NOTE

NO.: FEISA2007060504002

The following shipment has been agreed this day 08TH JUNE 2007 between the undersigned parties SHANGHAI FAREAST INT'L SHIPPING CO.,LTD as charterers and SINORICHES GLOBAL LTD as disponent owners:

Performing Vessel: M.V. ---MV VERA OR SUB
-MV VERA (EX ERA )

BC , BLT JUNE'77 /JAPAN , DWT 34,931 MTS AT 11/40 MGRS SUMMER DRFT
PANAMA FLAG . LOA : 187,869 M , LBP : 177,00 MTRS . BREADTH: 27,80 M
DEPTH: 16.26 M . GRT/NRT  23,351/12,983 .
4 CRNS X 15 SWL T5 , Capes unteachabl 7.7 mts
5 HOLDS/ HA COVERS "FOLDING STEEL ROLLING" --TTC 49.7
GRAIN/BALE 46,543 / 47,344 CBM ,
PANAMA CBM/FEET : 23069/8704 , CO2 FITTED.
HOLDS CUBIC BREAKDOWN
A.D.A

Fixture, negos etc to be kept strictly private & confidential.

Port of Loading: 1 Safe Berth CHANGSHU CHINA  AAAA
Port of Discharge: 1 Safe Berth RAVENNA  AAA
Owners berth both ends.

Cargo: 5800 mt  STEEL PLATE AND COILS,5% MOLCO
13200MT STEEL PRODUCTIONS,5% MOLCO

Laycan  13/20/JUNE ,2007

Freight:
USD 73.00 per mt/NET, FIOST bss 1/1 5800 mt  STEEL PLATE AND COILS ,5% MOLCO
USD 77. PER MT/2.5% COMM FIOST BSS 1/1 ,13200MT STEEL PRODUCTIONS,5% MOLCO
, lashing/securing/dunnage if any to be for charterer's account

Cargo to be delivered to vessel as fast as vessel can receive, and taken away from the vessel as fast as vessel can deliver.

Freight payable in United States dollars in full less commission (if any) within five (5) banking days after completion of loading upon signing / releasing bills of lading marked "freight payable as per Charter party".

LOG ©

5

08/08 07  FRI 14:01 FAX                                                          ☒002

Should Charterers require "freight prepaid" bills of lading, same to be released once full freight received into owners bank or upon written confirmation from the charterers and their bank that the freight has been fully and irrevocably transferred to owners account.
Full freight is deemed earned discountless and non returnable upon completion of loading, ship and / or cargo lost or not lost.

- PENAVICO NO TITLE bills of lading shall be issued into which bill this booking note shall be fully incorporated.

- Taxes / dues / charges / wharfages if any on cargo / freight / documents for Charterers account both ends.
Taxes / dues / charges on vessels flag / crew / ownership for Owners account both ends.
Owners to be free from any extra insurance premiums imposed because of cargo carried, which to be for charterers account.

- If at loading / discharging Port/s the vessel, having arrived, is unable to load / discharge due to shippers / receivers / their agents cargo documentation not being ready or in order or the shipper / receiver / their agents are unable to deliver / receive the said cargo, then any time lost to be for Charterers account and detention will accrue and fall due day by day at the rate of USD 38000 per day, pro rata and shall be paid within 3 days after presentation of owners invoice.

- The owners shall have a lien on the cargo and on all sub-freight payable in respect of the cargo, for freight, deadfreight, detention, claims for damages and for all other amounts due under the booking note, including costs of recovering same.

- This fixture, negotiations to be kept strictly private and confidential.

- All terms and conditions including law and arbitration clause of Gencon 1994 Charter party fully incorporated herein, with logical amendments with booking note terms to prevail in case of conflict.

For and on behalf of Charterers,
SHANGHAI SINCERE AND SHIPPING CO LTD.

For and on behalf of owners
SINOSCREEN GLOBAL LTD.
SINOSCREEN GLOBAL LIMITED

Authorised Signature(s)

# Exhibit 6
## *(Yang Declaration)*

*Exhibit 6*
*(Yang Declaration)*

001

## FIXTURE NOTE

- acct: BTB INT'L TRADING & TRANSPORTATION CO.,LTD
  owner: ALLIED MARITIME INC

- CP DATED: 27TH JUNE 2007
- performing vsl : M/V Paradise Island
Single deck bulkcarrier
Highest Class NKK
Panama Flag
Built 2001
DWT 46,513 MT on 11.807 M SSW
GRT 25,545
NRT 15,898
Loa 183.0 M
Beam 30.95 M
Gear 4x30 MT
5 holds
5 hatches
Hatch Dims: 1/3) 17.1 x 15.6  2/4/5) 19.8 x 15.6
speed 13,5 knots
   A,D,A



for

- for a full or part cargo of  ABT 7500MT WIRE ROD in coil

- under deck stowage only

- 1 SPB Bayuquan  ,CHINA/ 1 SPB Callao , Peru

- bends ows to satisfy themselves for eventual prevailing restrictions
  in respect of loa/beam/draft/tide

- laycan  17-25/July  2007



- freight usd 80.00 per MT FILO under hook bss 1/1

- 100% of freight payable less ttl comm w/n 5 bdays after completion of
  loading.

- in case master may have remarks as to cgo condition, which to be



FOR AND ON BEHALF OF PERFORMENT OWNERS
AS PER AUTHORITY

DENMAR CHARTERING & TRADING GMBH
AS BROKERS ONLY

cargo related only, same he is allowed to insert into mates receipt only, however bsl to be signed 'clean'. In case required chrs ( chrs & shipper) to issue and sign respective l.o.i. (as per own wording - sub approval) and same to be faxed to ows prior releasement of bsl.

bsl marked 'freight prepaid' only to be released upon chrs bank hv confirmed to ows bank irrevocable frt-payment and upon receipt of owners'authorization.

- full freight deemed earned on compl of loading and is due discountless and nonreturnable ship/cargo lost or not lost. each party to bear it's own bank charges.

- c.q.d. loading/disch with no demurrage/no despatch

- detention at load/dischport to apply:-
  a) non readiness of cgo  for shipment
  b) customs/export documents not in order on vsls arrival

- detention rate usd 30,000,00 day/rata

- compulsory shipside tally if any,  to be for owners acct, compulsory shoreside tally if any , to be for chrts  acct

- any taxes/dues on cargo to be for chrs/shippers acct, same on vsl/ crew and freight, if any to be for owners acct

- owners/vessel to be responsible for number of pieces loaded and as stated for in the bs/l

- owners' agents both ends.

- lashing/dunnage/seperation if any tobe for charterer/shippers account
- extra for vsls age to be for chrs acct

- ows agree that chrts resp shippers/receivers may attend the vsl during load/disch by a surveyor and taking photos.

- all negos and evtl fixture to remain strictly p+c and not to be reported to 3rd parties.

- owise gencon 94 with logical amendments as per mtemns agreed and sub revlewing.

FOR AND ON BEHALF OF SHIPOWNER/ OWNERS
AS PER AUTHORITY

PENMAR CHARTERING & TRADING GMBH
AS BROKER ONLY

- 3,75pc ttl here incl adress comm

- end recap

For and on behalf of charterers:

For and on behalf of owners

FOR AND ON BEHALF OF DISPONENT OWNERS
AS PER AUTHORITY



DENMAR CHARTERING & TRADING GMBH
AS BROKERS ONLY

# Exhibit 7
## *(Yang Declaration)*

*Exhibit 7*
*(Yang Declaration)*

# ALLIED MARITIME INC.
## 80 BROAD STREET
## MONROVIA - LIBERIA

C/O ALLIED MARITIME INC.
3, G. Drossini Str.      Voula 166 73
Athens, GREECE
Tel (210) 9657116, (210) 9658843
(210) 9658660   Fax (210) 9657175
Tlx 214016 ALMA GR

30/07/07

TO    MESSRS BTB INTERNATIONAL

## FREIGHT INVOICE

RE:  M/V PARADISE ISLAND – ACCT BTB INTERNATIONAL

Vessel completed loading having taken:

3,577 coils  =  7,378.16 m.t.

Freight Invoice

usd 590,252.80  =  7,378.16 m.t. at usd 80.00 m.t.
usd( 22,134.48)  =  3.75% commission

usd 568,118.32  =  due Allied Maritime

WHICH AMOUNT PLEASE TELEGRAPHICALLY REMIT AS FOLLOWS:

BANK              HSBC BANK PLC 93 AKTI MIAOULI PIRAEUS BRANCH
                  GREECE SWIFT CODE: MIDLGRAA
                  CORRESPONDENT BANK IN NEW YORK: HSBC BANK USA
                  NEW YORK SWIFT CODE. MRMDUS33
FAVOUR            ALLIED MARITIME INC
ACCOUNTING        IBAN NO. GR 6807100810000091048610036
AMOUNT            US DOLLARS 568,118.32
REF               M/V PARADISE ISLAND – ACCT BTB INTERNATIONAL

" 7 "

# Exhibit 8
*(Yang Declaration)*

*Exhibit 8*
*(Yang Declaration)*

辽宁营口船务代理公司
CHINA MARINE SHIPPING AGENCY LIAONING YINGKOU COMPANY

收货单

MATE'S RECEIPT                                    S/O# BT103

| 船　名 | | 目的地 | |
| --- | --- | --- | --- |
| S/S. | PARADISE ISLAND/AON | For | CALLAO, PERU |

托运人
Shipper      DALIAN DONGZHAN GROUP CO., LTD
             NO. 319 ZHONGSHAN RD SHAHEKOU DIST. DALIAN CHINA

受货人
Consignee    TO ORDER

通　知
Notify       PRODUCTOS DE ACERO CASSADO SA, 4420 AV NESTOR GAMBETOR NO CALLAO LIMA PERU

连得下列完好状况之货物装船后将签署收货纸
Receive on board the undermentioned goods apparent in good order and condition and sign the
accompanying receipt for the same.

| 标记及号码<br>Marks & Nos. | 件数<br>Quantity | 货名<br>Description of Goods | 毛重量公斤<br>Gross Weight<br>in Kilos | 尺 码<br>Measurement<br>立方公尺<br>Cu.M. |
| --- | --- | --- | --- | --- |
| PARTLY RUSTY<br><br>QUALITY AS PER<br>SHIPPER'S QUANTITY<br>AS PER 1400 TALLY | | STEEL ROD IN COILS<br>BRAND  LOW CARBON<br>WIRE RODS<br>G.W/N.W/NO/1.045 | 7.70 | |
| 共计件数(大写)<br>Total Number of package in Writing | | TOTAL SAY THREE THOUSAND AND FORTY SIX COILS ONLY | | |

日期
Date  2007-01-2  时间
Time  21:50

装入船舱
Stowed  HATCH No.1, No.3, No.4, No.5

实收
Received  3,046 COILS

理货员签名
Tallied By                    大　副
                             Chief Officer

8"

辽宁营口船务代理公司
CHINA MARINE SHIPPING AGENCY LIAONING YINGKOU COMPANY

收货单
MATES RECEIPT

S/ON№ 07106

| 船 名<br>S/S | PARADISE ISLAND/AIGH | 目的港<br>For | CALLAO, PERU |
|---|---|---|---|

托运人
Shipper      DALIAN DONGZHAN GROUP CO., LTD
             NO. 313 ZIXINGHUA RD SHAHAKOU JIST DALIAN, CHINA

受货人
Consignee    TO ORDER

通 知
Notify       PRODUCTUS MEAGRIO CASSADO SA, 642Y AV NESTOR GRASSETOIL NO CALLAO LIMA PERU

兹将下列完好状况之货物装船后希签署收货单
Receive on board the undermentioned goods apparent in good order and condition and sign the
accompanying receipt for the same

| 标记及号码<br>Marks & Nos. | 件数<br>Quantity | 货名<br>Description of Goods | 毛重量公斤<br>Gross Weight<br>in Kilos | 尺 码<br>Measurement<br>立方公尺<br>Cu.M. |
|---|---|---|---|---|
| | 531 COILS | WIRE ROD | G.WT. 1063802021 | |
| PARTLY RUSTY<br>Quality per port<br>Shipped & Quantity<br>As per inated Tally | | | 7.00 | |

件计件数(大写)
Total Number of package in Writing    TOTAL SAY FIVE HUNDRED THIRTY ONE COILS ONLY

| 日期<br>Date | 2007-07-27 | 时间<br>Time | 06:45 |
|---|---|---|---|

装入何舱
Stowed       HATCH NO. 3

实 收
Received     531 COILS

理货员签名
Tallied By   高健              大 副
                              Chief Officer

# Exhibit 9
## *(Yang Declaration)*

*Exhibit 9*
*(Yang Declaration)*

Edward A. Keane*
Cornelius A. Mahoney*
Garth S. Wolfson*

Jorge A. Rodriguez*†

Of Counsel
Stephen J. Murray

* Also admitted in NJ
† Also admitted in CT

MAHONEY & KEANE, LLP

*Attorneys at Law*
*111 Broadway, Tenth Floor*
*New York, New York 10006*
Telephone (212) 385-1422
Facsimile (212) 385-1605
lawoffices@mahoneykeane.com

Connecticut Office

14 Pilgrim Lane
Weston, CT 06883
Tel: (203) 222-1019
Fax:(203) 222-0252

August 14, 2007

VIKING MARINE S.A.
c/o PRIAMOS MARITIME S.A., 72-74,
Marathonos Str., 16673 Panorama Voulas,
Athens, Greece

SINORICHES GLOBAL LTD, a/k/a
SGL SHIPPING LTD
Shidai Building No. 7, Room 1901
Gangwan Road, Zhongshan District
Dalian, China PC 116001

CHU BEIPING & CO. LAW OFFICE
Room 1318-1319, Tower A of Mingshi Fortune
Center, No. 20
Gangwan Road, Zhongshan District
Dalian, China PC 116001

Re:     CALDER SEACARRIER v. VIKING MARINE,
ET AL.
USDC/SDNY, 07 CV 6520 (LAK)
Our File No. 12/3437

Dear Sir or Madam:

We represent Plaintiff, CALDER SEACARRIER CORP., in the above-referenced matter. Our client has authorized us to commence an action to recover funds currently due by Defendants VIKING MARINE S.A. ("VIKING"), and SINORICHES GLOBAL LTD a/k/a SGL SHIPPING LIMITED ("SGL") resulting from the breach of maritime contracts. Pursuant to their request, we have filed a Summons and Complaint naming VIKING MARINE S.A. and SINORICHES GLOBAL LTD, a/k/a SGL SHIPPING LIMITED as Defendants. Additionally, we have sought and obtained an Ex Parte Order, permitting the attachment or garnishment of funds belonging to the Defendants, which may be found in the Southern District of New York, the venue for the underlying claim. Enclosed for your review are the following documents:

1. Plaintiff's First and Amended Summonses and Complaints;
2. Ex Parte Orders signed by Judges Richard M. Berman and George B. Daniels, of the Southern District of New York; and
3. Writs of Attachment, issued by the Clerk of the Southern District Court.

*9*

MAHONEY and KEANE

Currently, as per our request, J.P Morgan has attached a wire transfer from Defendant VIKING, totaling $5,925.00. Citibank has also restrained funds belonging to VIKING totaling $19,143.00. The total funds currently restrained from VIKING are $25,068.00.

Also, The Bank of New York has restrained $568,092.32, belonging to Defendant SGL.

Please consider this letter Notice to Defendant, pursuant to Fed. R. Civ. P. Rule B(2) and Local Rules relating thereto.

Thank you for your attention in this matter.

Sincerely yours,

MAHONEY & KEANE LLP

By: _____
Jorge A. Rodriguez

Encl.

Cc:    VIA EMAIL cbuchholz@rawle.com (w/o enclosures)
       Carl D. Buchholz, III
       Rawle & Henderson

# Exhibit 10
*(Yang Declaration)*

*Exhibit 10*
*(Yang Declaration)*

amp

| | |
|---|---|
| **From:** | Jorge Rodriguez [jrodriguez@mahoneykeane.com] |
| **Sent:** | Thursday. August 23. 2007 5:31 PM |
| **To:** | 'Garth Wolfson [Mahoney & Keane]'; amp |
| **Subject:** | RE: M/V VERA |

Mr. Pare:

As per Mr. WOLFSON's request, we inform you that garnishee DEUTSCHE BANK is currently restraining $81,041.22 of SCL SHIPPING LTD's funds. I will request further detail on the attachment, and forward such information once it is received.

Best regards,

J. Rodriguez/s/

Jorge A. Rodriguez, Esq. * Mahoney & Keane, LLP. * 111 Broadway, 10th Floor * New York, New York 10006

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited.   If you received this in error, please contact the sender and delete the material from any computer.

10

# Exhibit 11
## *(Yang Declaration)*

*Exhibit 11*
*(Yang Declaration)*

# SGL SHIPPING LIMITED

TO: STEEL FORCE FAR EAST LTD
FM: SGL SHIPPING LIMITED

DD: 16TH AUGEST 2007

RE: MV SALAMANCA                           INV NO.: SA070816001

### FREIGHT INVOICE
================

Ship's Name : MV SALAMANCA

B/L NO: F28-F37/F46-F48/F52

Cargo: 920.923MT H-BEAM

Freight : 920.923 MT X US$88.00             = US$81,041.22

---

TOTAL DUE TO OWNER :   US$81,041.22

Kindly check and pay above to below account asap : (NET BANK CHARGE)

BANKER : NANYANG COMMERCIAL BANK LTD , HONGKONG
SWIFT ADDRESS :NYCBHKHH
A/C NO.: 043-i57-100-053-13
IN FAVOUR OF : SGL SHIPPING LIMITED
REF: MV SALAMANCA

E. & O.E



"11"