UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CALDER SEACARRIER CORP.,                      :
                                              :
                         Plaintiff,           :
                                              :
                                              :        07 CV 6520 (LAK)
          - against -                         :
                                              :
VIKING MARINE S.A. and SINORICHES             :
GLOBAL LTD, a/k/a SGL SHIPPING                :
LIMITED                                       :
                                              :
                         Defendants.          :
                                              :
------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO VACATE ATTACHMENT AND
DISMISS ACTION AGAINST SGL SHIPPING LIMITED**


**NOURSE & BOWLES, LLP**
**Attorneys for Defendant**
**SGL SHIPPING LIMITED**
**One Exchange Plaza**
**At 55 Broadway**
**New York, NY  10006-3030**
**(212) 952-6200**

## TABLE OF CONTENTS

Introductory Statement ............................................................................................... 1

Summary of Facts .......................................................................................................... 3

POINT I

THE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ARE NOT
VERIFIED AND HENCE THE ATTACHMENTS BASED ON THESE
ALLEGATIONS SHOULD BE VACATED ....................................................................... 5

POINT II

THE BURDEN OF PROOF IS ON PLAINTIFF TO ESTABLISH
WHY THE ATTACHMENTS SHOULD NOT BE VACATED
UNDER SUPPLEMENTAL RULE E(4)(F) ...................................................................... 6

POINT III

THE ATTACHMENT MAY NOT BE MAINTAINED ABSENT
REASONABLE GROUNDS THAT SHOW SGL SHIPPING
IS ACCOUNTABLE FOR THE DEBTS OF SINORICHES,
WHICH IS ENTIRELY LACKING ................................................................................... 8

POINT IV

ATTACHMENT OF AN EFT ALONE DOES NOT  PROVIDE SUFFICIENT
MINIMUM  JURISDICTIONAL CONTACTS WITH NEW YORK ............................. 12

POINT V

IF THE RECENT MOTION BY SINORICHES TO DISMISS
THE CASE AGAINST IT IS GRANTED, THEN THE ATTACHMENTS
AGAINST SGL SHIPPING SHOULD BE VACATED AND
THE CASE DISMISSED FOR THIS ADDITIONAL REASON .................................... 15

POINT VI

IF THE ATTACHMENT IS NOT VACATED IT IS RESPECTFULLY
SUBMITTED THAT CERTIFICATION TO APPEAL
PURSUANT TO 28 U.S. CODE § 1292(b) BE GRANTED ........................................... 16

Final Point .................................................................................................................... 16

Conclusion ..................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*American Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 677
   (2d Cir. 1974) ..................................................................................... 11

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*,
   605 F.2d 648 (2d Cir. 1979) ............................................................. 12, 13

*Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd.*, 460 F.3d 434, 438
   (2d Cir. 2006) ...................................................................................... 5

*Atwood Navigation, Inc. v. M/V Rizal*, No. 89-1221, 1989 U.S. Dist. LEXIS 1828, *4
   (E.D. Pa. Feb. 24, 1989) ..................................................................... 9

*Brave Bulk Transport Ltd. v. Spot On Shipping Ltd.*, 2007 U.S. Dist. LEXIS 69751
   (September 17, 2007; Judge Colleen McMahon) ......................................... 10

*Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co.*, 2007 U.S. Dist.
   LEXIS 24737 (S.D.N.Y. August 4, 2007) ................................................... 10

*Contichem LPG v. Parsons Shipping Co., Ltd.*, 229 F.3d 426, 434-5 (2d Cir. 2000) ........ 6

*Dolco Investments, Ltd. v. Moon River Development, Ltd.*, No. 06 Civ. 12876 (RWS),
   2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. Apr. 26, 2007) .............................. 9

*Dow Chemical Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 342
   (2d Cir. 1986) ...................................................................................... 11

*Fescoe Ocean Management, Ltd. v. High Seas Shipping Ltd.*, 2007 U.S. Dist. LEXIS
   19970 (S.D.N.Y. March 12, 2007) ......................................................... 11

*International Marine Consultants, Inc. v. Captain A. Karavias*,
   No. 82 Civ. 8296(CMM), 1985 U.S. Dist. LEXIS 19272, *14
   (S.D.N.Y. Jun. 3, 1985) ........................................................................ 9

*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945) ................... 12

*Kirno Hill v. Holt*, 618 F.2d 982 (2d Cir. 1980) .............................................. 11

*Navalmar (U.K.) Ltd. v. Welspun Gujaret Stahl Rohren, Ltd.*, 485 F. Supp.2d 399
   (S.D.N.Y. 2007) ................................................................................... 14

*North Georgia Finishing, Inc. v. DiChem, Inc.*, 419 U.S. 601, 95 S.Ct. 719 (1975) ..... 8, 9

*Puerto Rico Port Authority v. Barge Katy-B*, 427 F.3d 93 (1st Cir. 2005) ........................ 6

*Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569 (1977) ................................ 12, 13, 14, 15

*Status Int'l S.A. v. M/V ESPERANZA C*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998) .......... 11

*Stevedoring Serv's of Am. V. Ancora Transp., N.V.*, 59 F.3d 879, 883
    (9th Cir. 1995) ........................................................................................................ 9

*T&O Shipping Ltd. v. Source Link Co., Ltd.*, 2006 U.S. Dist. LEXIS 88153
    (S.D.N.Y. 2006) ...................................................................................................... 6, 8

*Thyssen Steel Corp. v. Federal Commerce & Navigation Co.*, 274 F. Supp. 18, 21
    (S.D.N.Y. 1967) ....................................................................................................... 5

*Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co.*, 743 F.2d 956, 958 (1st Cir. 1984)................ 16

*Ullises Shipping Corp. v. Fal Shipping Co. Ltd.*, 415 F. Supp.2d 318, 323
    (S.D.N.Y. 2006) ....................................................................................................... 8

*Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 22 (2d Cir. 1976) .................................. 11

*Williamson v. Recovery Ltd. P'ship*, 2007 U.S. Dist. LEXIS 4438 (S.D.N.Y. January 16,
    2007) ....................................................................................................................... 9

**Statutes**

28 U.S. Code § 1292(b).................................................................................................. 16
28 U.S. Code § 1746 ...................................................................................................... 3

**Rules**

Rule B(1)(a) of the Supplemental Rules ......................................................................... 5
Supplemental Rule E(2)(a)........................................................................................... 6, 8
Supplemental Rule E(4)(f) ...................................................................................... 6, 9, 11, 16

NOURSE & BOWLES, LLP
Attorneys for Defendant
SGL SHIPPING LIMITED
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CALDER SEACARRIER CORP.,                               :
                                                      :
                          Plaintiff,                  :
                                                      :    07 CV 6520 (LAK)
        - against -                                   :
                                                      :
VIKING MARINE S.A. and SINORICHES                     :
GLOBAL LTD, a/k/a SGL SHIPPING                         :
LIMITED                                               :
                                                      :
                          Defendants.                 :
                                                      :
-------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO VACATE ATTACHMENT AND
## DISMISS ACTION AGAINST SGL SHIPPING LIMITED


### Introductory Statement

This memorandum of law is submitted on behalf of defendant, SGL Shipping

Limited ("SGL Shipping") in support of its motion to vacate any and all attachments of

its electronic fund transfers ("EFTs") which are presently known to include an attachment

in the amount of $568,092.32 and another in the amount of $81,041.22 and to dismiss the

action against it. These attachments were effected against SGL Shipping by plaintiff,

Calder Seacarrier Corp. ("Plaintiff") in support of claims Plaintiff apparently has against

defendant, Sinoriches Global Ltd. ("Sinoriches") in the amount of $1,950,684 and only

derivatively against SGL Shipping on the allegation that Sinoriches is "a/k/a" SGL Shipping, which is completely incorrect. Further, these EFTs have nothing to do with the claim asserted in the Complaint nor with the Plaintiff nor with the defendants, Viking Marine S.A. ("Viking") and Sinoriches.

As the accompanying declaration of Guoxian Yang of SGL Shipping shows, SGL Shipping and Sinoriches have no corporate relation whatsoever to one another and neither goes by the name of the other. SGL Shipping's sole involvement in events described in the First Amended Complaint, as outlined in the Guoxian declaration, was to act, as it routinely does, as a transfer agent in paying freight. Plaintiff's attachment, in effect, prevents SGL Shipping from conducting its normal business which includes the international transfer of funds.

In the circumstances, the attachment by Plaintiff of funds of SGL Shipping, a third party unrelated to the defendant, Sinoriches, should be vacated. As also indicated herein, there is insufficient jurisdictional "nexus" for the court to maintain an action over SGL Shipping and/or the attached funds on the basis of an EFT being transferred through a correspondent bank in New York. Sinoriches has also recently filed a motion to dismiss the action against it. If this is granted, the attachments against SGL Shipping should be vacated and the case against it dismissed for the additional reason that Plaintiff's sole claim against SGL Shipping is that it is an alternate name for Sinoriches. Finally, it is requested that leave be given for SGL Shipping to seek costs, fees and damages and any other relief just in the premise.

## Summary of Facts

Relevant facts concerning Plaintiff's claims are taken from its First Amended Complaint. Facts concerning SGL Shipping are based on the declaration of its general manager, Guoxian Yang.

Plaintiff claims that it, as charterer, entered into a charter party dated June 16, 2007 with Viking, as owner, for use of the vessel M/V VERA and that Viking allegedly breached the charter by "failing to provide the said vessel." Plaintiff, in a second count, apparently claims it entered into a subcharter in the form of a contract of affreightment with Sinoriches for the shipment of steel products on board the M/V VERA. Despite its assertions that Viking *failed to provide Plaintiff with the use of the vessel* (paragraph 7 of the First Amended Complaint), Plaintiff paradoxically claims that Sinoriches failed to pay freight, demurrage, port fees and other associated costs to Plaintiff in the amount, with interest and costs, of $1,950,684 under the subcharter. It is difficult to understand how Plaintiff can be entitled to compensation from Sinoriches for a vessel that Plaintiff claims it did not have the use of. In all events, the sole claim against SGL Shipping is Plaintiff's oblique allegation that Sinoriches is 'also known as' SGL Shipping Limited. Even this allegation *is not verified as is required* by Rule B of the Supplemental Rules and, in fact, all allegations in the First Amended Complaint are made only "upon information and belief" (see preamble) indicating a minimum level of pleading when a much higher level is required by Rule B.

As outlined in the accompanying declaration made in accordance with 28 U.S. Code § 1746 by Guoxian Yang, general manager of SGL Shipping, it is incorporated

under the laws of Hong Kong with an office and place of business in China. It has three
(3) managers whose individual names, *Shen* Huawei, *Guoxian* Yang and *Lin* Ling, led to
the name of the company, "*SGL* Shipping Limited". SGL Shipping has several business
lines. First, it charters vessels as a principal. Examples of this are provided in the
declaration of Mr. Guoxian. SGL Shipping also acts as a transfer agent in the transfer of
foreign exchange for other companies. As explained in the Guoxian declaration, the
transfer of foreign exchange in China is subject to controls and it is therefore a frequent
occurrence that agents, such as SGL Shipping, transfer funds on behalf of others. SGL
Shipping, as a Hong Kong company, may do this and it does so on behalf of others as a
normal line of business. In fact, as explained in the declaration of Mr. Guoxian, SGL
Shipping's sole connection with the M/V VERA was to act as a transfer agent to send
funds to Viking on behalf of Shanghai Fareast which had subchartered that vessel. This
was all done in the ordinary course of business of SGL Shipping. It had no other
involvement with the transaction described in the First Amended Complaint.

   Plaintiff has attached at least two known electronic funds transfers made by SGL
Shipping. First, as outlined in the Guoxian declaration, Plaintiff has attached a transfer in
the amount of $568,092.32. This was a transfer made by SGL Shipping, again acting as a
transfer agent for the payment of freight, this time on behalf of BTB International Trade
& Transport Co. Ltd. ("BTB International") to the owners of the M/V PARADISE
ISLAND under a charter for that vessel. Relevant supporting documents are attached to
the Guoxian declaration. Second, Plaintiff attached a further $81,041.22 representing a
payment of freight being made to SGL Shipping as the disponent owner of the vessel

4

M/V SALAMANCA. Again, copies of relevant documents are attached to the Guoxian

declaration. Significantly, neither of these transactions had anything to do with the

M/V VERA nor Sinoriches nor any of the parties to the transaction described in the First

Amended Complaint except, of course, for SGL Shipping. Again, in both these cases,

SGL Shipping acted in its normal capacity as transfer agent or as disponent owner. There

is no basis for attaching these transfers in support of Plaintiff's claim.

## POINT I

### THE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ARE NOT VERIFIED AND HENCE THE ATTACHMENTS BASED ON THESE ALLEGATIONS SHOULD BE VACATED

"Process in rem and of maritime attachment represent an exception to the general

rule that in the absence of statutory authorization a plaintiff may not have security for his

claim until it is established and reduced to judgment." Thyssen Steel Corp. v. Federal

Commerce & Navigation Co., 274 F. Supp. 18, 21 (S.D.N.Y. 1967). Because maritime

attachment represents an "exception" to the general rule against the pre-judgment seizure

of a defendant's assets, its usage should be carefully guarded.

In fact, Rule B(1)(a) of the Supplemental Rules specifically requires that any

complaint seeking Rule B process be *verified*. The complaint and amended complaint

contain no verification. In fact, the allegations in the First Amended Complaint are made

only on "information and belief" (see preamble). The attachments based on these

pleadings are defective and should therefore be vacated for this reason alone. See Aqua

Stoli Shipping Ltd. v. Gardner Smith PTY Ltd., 460 F.3d 434, 438 (2d Cir. 2006)

("Without doubt the Rule E(4)(f) hearing provides defendants with an opportunity to argue that the requirements of Rule B were not in fact met. . . ."). Apart from its erroneous, unverified allegation that Sinoriches is "a/k/a" SGL Shipping, there are *no* allegations that support a claim against SGL Shipping. Pleading requirements for pre-judgment attachments under the Supplemental Rules are quite particular (see Supplemental Rule E(2)(a) and Puerto Rico Port Authority v. Barge Katy-B, 427 F.3d 93 (1st Cir. 2005) at page 105). Since the attachments on unverified allegations were improperly obtained under any view of the Supplemental Rules, no subsequent attachment of these funds should be allowed as this would reward an improperly obtained attachment. See Contichem LPG v. Parsons Shipping Co., Ltd., 229 F.3d 426, 434-5 (2d Cir. 2000) and T&O Shipping Ltd. v. Source Link Co., Ltd., 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. 2006) *22 ("Because it is prudent to avoid constitutional questions, the Court will not construe the Order of Attachment it signed nor Rule B to permit Plaintiff to retroactively amend its Attachment").

## POINT II

### THE BURDEN OF PROOF IS ON PLAINTIFF TO ESTABLISH WHY THE ATTACHMENTS SHOULD NOT BE VACATED UNDER SUPPLEMENTAL RULE E(4)(F)

Supplemental Rule E(4)(f) provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which *the plaintiff shall be required to show* why the arrest

or attachment should not be vacated or other relief granted
consistent with these rules.

(emphasis added)

The Advisory Committee Notes to the 1985 Amendments to the Rule state:

Rule E(4)(f) is designed to satisfy the constitutional
requirement of due process by guaranteeing to the shipowner
a prompt post-seizure hearing at which he can *attack the
Complaint, the arrest, the security demanded, or any other
alleged deficiency in the proceedings*.

(emphasis added)

*    *    *

Upon an oral or written application similar to that used in
seeking a temporary restraining order, see Rule 65(b), the
court is required to hold a hearing as promptly as possible to
determine whether to allow the arrest or attachment to stand.
*The plaintiff has the burden of showing why the seizure
should not be vacated.*  The hearing also may determine the
amount of security to be granted or the propriety of imposing
counter-security to protect the defendant from an improper
seizure.

(emphasis added)

The burden of justifying the Complaint and attachments sought therefore falls

squarely on Plaintiff in this case.  In this case, the *unverified* allegation as to SGL

Shipping in the First Amended Complaint is that Sinoriches is "also known as" SGL

Shipping.  This is entirely incorrect.  As the declaration of Mr. Guoxian further shows,

SGL Shipping has no corporate affiliation, either directly or indirectly with Sinoriches.

7

Apart from its unverified allegation, Plaintiff's complaint fails to state a claim against SGL Shipping, especially considering the pleading particularities required for a pre-judgment attachment demanded by Supplemental Rule E(2)(a).

### POINT III

### THE ATTACHMENT MAY NOT BE MAINTAINED ABSENT REASONABLE GROUNDS THAT SHOW SGL SHIPPING IS ACCOUNTABLE FOR THE DEBTS OF SINORICHES, WHICH IS ENTIRELY LACKING

Ex parte, pre-judgment attachments raise constitutional concerns.  See North Georgia Finishing, Inc. v. DiChem, Inc., 419 U.S. 601, 95 S.Ct. 719 (1975).  See also T&O Shipping, supra, 2006 U.S. Dist. LEXIS 88153 at *22 ("Because it is prudent to avoid constitutional questions, the Court will not construe the Order of attachment it signed or Rule B to permit Plaintiff to retroactively amend its Attachment.").  In North Georgia Finishing, the Supreme Court struck down the Georgia attachment provisions, in part, because "[t]here is no provision for an early hearing at which the creditor *would be required to demonstrate at least probable cause for the garnishment.*"  419 U.S. at 607, 95 S.Ct. at 723.  In that case, the Court was critical of the Georgia attachment statute which allowed attachments based on "conclusory allegations" 419 U.S. at 607, 95 S.Ct. at 722 and held that "some procedures are necessary to guard against the risk of initial error" in respect of an attachment.

Cases that recognize this critical point hold that a plaintiff claiming a corporate connection sufficient to justify an attachment "must present enough evidence to convince the court that there are *reasonable grounds* for piercing the corporate veil." Ullises

Shipping Corp. v. Fal Shipping Co. Ltd., 415 F. Supp.2d 318, 323 (S.D.N.Y. 2006).

(emphasis added). Any other rule would, without due process, place the attached

property "totally beyond use during the pendency of the litigation." North Georgia

Finishing, supra, 419 U.S. at 606; 95 S.Ct. at 722.

Other cases which require "reasonable grounds" include, Dolco Investments, Ltd.

v. Moon River Development, Ltd., No. 06 Civ. 12876 (RWS), 2007 U.S. Dist. LEXIS

31101 (S.D.N.Y. Apr. 26, 2007) ("Dolco fails to meet this burden because it has not

included any factual allegations that GML exercised complete domination over

Moonriver. Other than the conclusory allegation of domination, the Complaint and the

Amended Complaint both allege that GML paid Mooriver's debts to Dolco 'from time to

time' . . . [M]ore is required."); Stevedoring Serv's of Am. V. Ancora Transp., N.V., 59

F.3d 879, 883 (9th Cir. 1995) ("SSA offered little more than bare assertions that Armilla

(London) was an alter ego of Ancora."); Atwood Navigation, Inc. v. M/V Rizal, No. 89-

1221, 1989 U.S. Dist. LEXIS 1828, *4 (E.D. Pa. Feb. 24, 1989) ("Plaintiff Atwood

suggests that, in due time, it will show that the court should 'pierce the corporate veil' to

reach defendant Shipping and Trading. This proposition is offered without any support.

I cannot conclude in light of the record that plaintiff has met its burden under

Supplemental Rule E(4)(f)"); International Marine Consultants, Inc. v. Captain A.

Karavias, No. 82 Civ. 8296(CMM), 1985 U.S. Dist. LEXIS 19272, *14 (S.D.N.Y. Jun. 3,

1985) ("Plaintiffs allegation that Karavias used these corporations to insulate himself

from liability is unsubstantiated."); Williamson v. Recovery Ltd. P'ship, 2007 U.S. Dist.

LEXIS 4438 (S.D.N.Y. January 16, 2007), <u>Compania Sudamericana de Vapores S.A. v.</u>

<u>Sinochem Tianjin Co.</u>, 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y. August 4, 2007).

The recently decided case of <u>Brave Bulk Transport Ltd. v. Spot On Shipping Ltd.</u>,

2007 U.S. Dist. LEXIS 69751 (September 17, 2007; Judge Colleen McMahon) is exactly

on point. In that case it was alleged that one company was the alter ego of another and

"the two companies use their names interchangeably with a design to fraudulently avoid

payment of just debts" and on this basis attachments against both were sought. On a

motion to vacate, the Judge stated:

> In moving to dismiss, ZSL has provided a declaration from
> one Zhang Jinlu, a director and shareholder of ZSL, who
> avers that there is no connection whatever between ZSL and
> Spot On and that ZSL is in fact the captive shipper for
> Zhangdian Iron Steel Works, which is owned by the Chinese
> Government. No contrary evidence having been presented, I
> conclude that there is no basis for the "information and
> belief" allegations contained in the verified amended
> complaint concerning any relationship between ZSL and Spot
> On. Since a Rule B attachment on an alleged alter ego's
> property cannot be sustained in the absence of a showing of at
> least some specific facts demonstrating the type of corporate
> domination and control sufficient to pierce the corporate veil,
> *See* <u>Dolco Investments, ltd. V. Moon river Development, Ltd.</u>
> <u>2006 U.S. Dist. LEXIS 31101 (S.D.N.Y. April 26, 2007)</u>, I
> must lift the attachment as against ZSL on that basis alone.

*    *    *

> Additionally, plaintiff's counsel is directed to explain to the
> court, at the same time and in the same manner, what facts or
> circumstances led to his "information and belief" allegations
> of some relationship between Spot On and ZSL. Failure to
> respond to this order to show cause may result in the
> imposition of sanctions if the court determines that this action
> was commenced in bad faith.

It is submitted that, absent reasonable grounds, a pre-judgment attachment against a company which is merely alleged, without convincing support, to be the alter ego of another is improper, cannot pass constitutional scrutiny and should be vacated on a Supplemental Rule E(4)(f) hearing such as this.  It should be pointed out to the Court, however, that there are cases which allow attachments against alter egos on a much more lenient standard.  See, for example,  Fescoe Ocean Management, Ltd. v. High Seas Shipping Ltd., 2007 U.S. Dist. LEXIS 19970 (S.D.N.Y. March 12, 2007).  It is submitted these cases are incorrectly decided for reasons outlined.

Here, all that exists is an unverified conclusory allegation, made on information and belief, that Sinoriches is 'also-known-as' SGL Shipping, a claim that is entirely denied.  The case law makes it clear that even *related* companies are entitled to a presumption of corporate separateness and the property of an allegedly related company should, on the limited allegations here, be immune from attachment on a claim against its alleged affiliate.  See generally Kirno Hill v. Holt, 618 F.2d 982 (2d Cir. 1980); American Renaissance Lines, Inc. v. Saxis S.S. Co., 502 F.2d 674, 677 (2d Cir. 1974); Dow Chemical Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 342 (2d Cir. 1986); Williams v. McAllister Bros., Inc., 534 F.2d 19, 22 (2d Cir. 1976); Status Int'l S.A. v. M/V ESPERANZA C, 994 F. Supp. 182, 186 (S.D.N.Y. 1998).

There is absolutely no basis to support the attachment of SGL Shipping's property.

## POINT IV

### ATTACHMENT OF AN EFT ALONE DOES NOT PROVIDE SUFFICIENT MINIMUM JURISDICTIONAL CONTACTS WITH NEW YORK

The Supreme Court recognized in Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569

(1977) that the "minimum contacts" doctrine of International Shoe Co. v. Washington,

326 U.S. 310, 66 S.Ct. 154 (1945) applies to quasi-in-rem as well as in personam

jurisdiction.  Hence, in that case the Court found that the presence of property in the State

of Delaware was insufficient, by itself, to establish quasi-in-rem jurisdiction in Delaware.

Instead, to satisfy the "minimum contacts" rule, the Court announced there must be some

connection or nexus between the property seized, the subject matter of the litigation and

the cause of action.  The Court said:

> The Delaware courts based their assertion of jurisdiction in
> this case solely on the statutory presence of appellants'
> property in Delaware.  Yet that property is not the subject
> matter of this litigation, nor is the underlying cause of action
> related to the property.  Appellants' holdings in Greyhound
> do not, therefore, provide contacts with Delaware sufficient to
> support the jurisdiction of the State's courts over appellants.

> 433 U.S. at 213
> 97 S.Ct. at 2584

Issues arose, in the wake of Shaffer, concerning its effect in the maritime context.

See G. Arceneaux III, "Has Shaffer v. Heitner Been Lost at Sea?", 46 La. L. Rev. 141

(1985) where the author succinctly noted "Shaffer requires a relationship between the

forum state, the defendant and the cause of action." Id. (emphasis added).  The Court of

Appeals for the Second Circuit addressed these issues in Amoco Overseas Oil Co. v.

Compagnie Nationale Algerienne de Navigation, 605 F.2d 648 (2d Cir. 1979). In that case freights had been attached under the New York Civil Practice Law and Rules but the matter was considered under federal maritime law with the court noting "special deference" should be accorded to the "admiralty context" but, importantly, that "maritime actors must *reasonably expect* to be sued where their property may be found." 605 F.2d at 655. (emphasis added). The specific issue was whether the attachment of the freight in that case satisfied Shaffer's "minimum contacts" requirements. The court found these were satisfied, stating, in relevant part:

> Analyzing *Shaffer* from that standpoint several distinguishing aspects of the instant case become evident. First, and most notable, is the fact that here, unlike *Shaffer*, the property attached is related to the matter in controversy. *See Shaffer, supra,* 433 U.S. at 207-90, 97 S.Ct. 2569. Far from being present in New York adventitiously, *compare Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905); *O'Connor, supra,* at 198, the freights that were attached were in Poten's accounts in New York pursuant to the Charter Party.

> \*    \*    \*

> Bearing these considerations in mind, we believe that the presence of the freights in New York, sent to New York with the agreement of appellant, is a sufficient basis for personal jurisdiction under the due process standard of *Shaffer v. Heitner*. Our conviction that it is fair to assert jurisdiction here is strengthened by the fact that the parties to the Charter also specified that arbitration was to take place in New York. The existence of such an agreement carries considerable weight in demonstrating that it is not unfair to require the parties to litigate in the forum in which arbitration was designated to take place.

> 605 F.2d at 655

13

In <u>Amoco</u>, it had been *agreed* that freight would be *paid* to the broker in New York and freight was *deliberately* sent to New York to the broker for this purpose. Clearly, there was foreseeability in New York being related to relevant events. Furthermore, the freight was for payment under the charter in dispute and was thus related to the cause of action as noted by the court. It had also been agreed that arbitration of disputes was to take place in New York. This, understandably, satisfied the <u>Shaffer</u> requirement for a sufficient nexus between the jurisdiction and quasi-in-rem attachment of property since there clearly was *deliberate* usage and availing of New York as a forum by the parties and the attached property was related to the transaction.

Electronic fund transfers ("EFTs"), however, are another matter. They typically originate in one foreign jurisdiction and are transmitted to another foreign jurisdiction and only have a brief, evanescent connection with New York while at a correspondent bank selected by the banks involved due to pre-existing banking relationships. See <u>Navalmar (U.K.) Ltd. v. Welspun Gujaret Stahl Rohren, Ltd.</u>, 485 F. Supp.2d 399 (S.D.N.Y. 2007). What is critically lacking, in the typical case of an EFT transmitted through a correspondent bank in New York, is any deliberate intent by the parties to utilize New York or invoke the protection of its laws. Here, furthermore, the attached funds had nothing to do with Plaintiff's claim. It is respectfully submitted that the mere passage of the EFTs through a correspondent New York does *not* satisfy the "minimum contact" requirement of <u>Shaffer</u>.

There is also no connection with New York and Plaintiff's case or the EFTs that were attached. Neither Plaintiff's underlying transaction nor any of the players or alleged

players have any connection with New York. Both attached EFTs also had nothing to do with New York. The attachment of $568.118.32 involves a Chinese charterer (BTB International) and a Greek owner (Allied Maritime) for a voyage from China to Peru (see Exhibit "6" to Guoxian declaration). The second attachment of $81,041.22 was likewise paid by a company through its bank in Hong Kong to SGL Shipping in China (see Exhibit 11 to Guoxian declaration) for a voyage from China to Columbia (see Exhibit "2" to Guoxian declaration). In short, there is no connection between the potentially brief presence of the EFTs in New York and the cause of action, the underlying transactions, or the parties themselves. In the circumstances, it is respectfully submitted the court has insufficient jurisdiction under <u>Shaffer</u> to hear this case and hence the case should be dismissed.

**POINT V**

**IF THE RECENT MOTION BY SINORICHES
TO DISMISS THE CASE AGAINST IT IS
GRANTED, THEN THE ATTACHMENTS AGAINST
SGL SHIPPING SHOULD BE VACATED AND THE
<u>CASE DISMISSED FOR THIS ADDITIONAL REASON</u>**

Sinoriches has recently moved to dismiss the case against it. Since the sole basis for Plaintiff's claim against SGL Shipping is that it is derivatively liable because it is simply another name for Sinoriches, any dismissal of the action against Sinoriches should include a vacation of all attachments and orders of attachment against SGL Shipping and dismissal of the case against it.

15

## POINT VI

## IF THE ATTACHMENT IS NOT VACATED IT IS RESPECTFULLY SUBMITTED THAT CERTIFICATION TO APPEAL PURSUANT TO 28 U.S. CODE § 1292(b) BE GRANTED

In the event that the court should decide that vacating the attachment and dismissing the case against SGL Shipping is not warranted, it is respectfully submitted that certification to appeal to the Court of Appeals for the Second Circuit be granted in accordance with 28 U.S. Code § 1292(b) on the issues of whether there is sufficient jurisdiction in the case of attachment of an electronic funds transfer and/or whether an attachment can survive a Supplemental Rule E(4)(f) hearing based on an unsupported conclusory allegation of an alter ego relationship without any reasonable grounds or probable cause to support it.

The relevant issues raise controlling questions of law as to which there is substantial grounds for difference of opinion and an immediate appeal may materially advance the ultimate termination of this litigation. See Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co., 743 F.2d 956, 958 (1st Cir. 1984).

## Final Point

As evidenced by the facts summarized herein, there is no remotely valid basis for Plaintiff naming SGL Shipping as a defendant and attaching its electronic funds transfers which have paralyzed its normal business operations without due cause or due process.

In the circumstances, on vacation of the attachments and dismissal of the case against it, SGL Shipping seeks leave to move for damages, costs and attorneys' fees.

### Conclusion

There is no basis for attachment of the electronic funds transfers made by SGL Shipping nor for the action asserted against it.  There is also insufficient jurisdiction to maintain an action against SGL Shipping.   In the circumstances, SGL Shipping respectfully requests that these attachments be vacated and the case against it dismissed, with leave to seek costs, attorneys' fees and damages arising in the circumstances and any other relief just in the premises.

Dated: New York, New York
      October 15, 2007

Respectfully submitted,

NOURSE & BOWLES, LLP
Attorneys for Defendant
SGL SHIPPING LIMITED

By: _____
      Armand M. Paré, Jr. (AP-8575)
      One Exchange Plaza
      At 55 Broadway
      New York, NY 10006
      (212) 952-6200