UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CALDER SEACARRIER CORP.,                    07 Civ. 6520 (LAK)

                    Plaintiff,

      -against-

VIKING MARINE S.A. and SINORICHES
GLOBAL LTD. a/k/a SGL SHIPPING
LIMITED,

                   Defendants.
----------------------------------------X


### MEMORANDUM OF LAW IN OPPOSITION
### TO MOTION BY ORDER TO SHOW CAUSE


Garth S. Wolfson (GW 7700)

    Of Counsel

                  MAHONEY & KEANE, LLP
               Attorneys for Plaintiff
              CALDER SEACARRIER CORP.
            111 Broadway, Tenth Floor
                New York, NY 10006
                  (212) 385-1422

## TABLE OF CONTENTS

*Page*

COUNTER-STATEMENT OF FACTS......................................1

ARGUMENT.........................................................2

POINT I.        CALDER'S CLAIMS WERE, IN FACT, VERIFIED
                UNDER OATH.......................................2

POINT II.       ASSUMING ARGUENDO THERE WAS ANY DEFICIENCY
                IN THE FORM OF THE VERIFICATION, CALDER
                SHOULD BE AFFORDED AN OPPORTUNITY TO SUBMIT
                AN AMENDED PLEADING TO FURTHER SUPPORT
                THE CONTINUED ATTACHMENT.........................4

POINT III.      CALDER HAS ALLEGED A <u>PRIMA FACIE</u> MARITIME
                CLAIM UNDER RULE B...............................7

POINT IV.       <u>IN REM</u> JURISDICTION OVER EFT'S PURSUANT TO
                RULE B COMPORTS WITH CONSTITUTIONAL
                DUE PROCESS.....................................12

CONCLUSION......................................................13

## COUNTER-STATEMENT OF FACTS

As stated in its pleadings, CALDER alleges, inter alia, that, in failing to pay freight due and owing to CALDER, defendant SINORICHES GLOBAL LTD a/k/a SGL SHIPPING LIMITED breached a June 7, 2007 contract of affreightment ("fixture agreement") CALDER with for the shipment of a cargo of steel products on board the M/V VERA." (Amended Complaint, Exhibit A to Pare Affidavit).

CALDER's in personam claim for breach of the fixture is the subject of arbitration in London, as required pursuant to the fixture, and the complaint now before the Court seeks security pursuant to Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims. Id.

To the extent the Court is inclined to look beyond the pleadings, CALDER respectfully refers the Court to the Declaration of Captain Panagiotis Mihalitsis executed on October 19, 2007 (Exhibit A to Wolfson Declaration), which addresses in detail the factual argument now before the Court.

**ARGUMENT**

**POINT I.**      **CALDER'S CLAIMS WERE, IN FACT, VERIFIED UNDER OATH.**

Rule B does not define the form a verification must take. But, if the allegations in the complaint are sworn to by a party or the party's attorney, the verification should be deemed sufficient. See, S.C. Loveland Co. v. Trident Maritime Co., No. 95-711, 1995 U.S. Dist. LEXIS 2731, **7-8 (E.D. Pa. Mar. 6, 1995) ("[T]o whatever extent plaintiff's filings did not conform with, as defendants put it, the 'form used regularly by law firms practicing maritime law' to dismiss the complaint based on these deviations would be a triumph of form over substance.") (citations omitted); Crysen Shipping Co. v. Bona Shipping Co., 553 F. Supp. 139, 141 (M.D. Fla. 1982) ("While the Court is in agreement that Plaintiff did not strictly comply with [the local rule regarding verification], it finds substantial compliance therewith has been met by plaintiff and any deficiency in the verification does not form the basis for an Order quashing the Amended Process of Maritime Attachment and Garnishment."), disapproved on other grounds, Schiffartsgesellschaft Leonhardt & Co. v. Bottacchi de Navegacion, 773 F.2d 1528 (11th Cir. 1985).

Local Civil Rule 1.10 does not take a rigid stance either, allowing any statement under oath, under penalty of perjury, signed by an attorney, or even just represented orally in open court to meet any situation requiring a "verified statement."

In the case at bar, the verification went far beyond a simple, one-line form referring to the complaint. (Exhibit B to Wolfson Declaration). Further to the expressed preference of the Court for further factual background before signing the order, plaintiff provided an Affidavit in support of the Rule B attachment not just averring that the defendants could not be found in this District, but specifically swearing under oath and upon information and belief to each and every substantive allegation contained in the Amended Complaint, as well as more detailed statements as to the bases for the damages sought. <u>Id.</u> It is understandable that SGL's counsel was unaware of this Affidavit, since it does not appear on the docket and he never made inquiry of the undersigned on the matter. However, it should now be clear that plaintiff not only verified the allegations, but went well beyond the minimal verification required. Accordingly, plaintiff submits that the allegations were sufficiently verified under oath.

POINT II.    ASSUMING ARGUENDO THERE WAS ANY DEFICIENCY IN THE FORM OF THE VERIFICATION, CALDER SHOULD BE AFFORDED AN OPPORTUNITY TO SUBMIT AN AMENDED PLEADING TO FURTHER SUPPORT THE CONTINUED ATTACHMENT.

It must be noted that none of the cases cited by SGL dismiss complaints or attachments based on any lack of verification. Indeed, such a proposition would be belied by hornbook law:

> While verification should be made by the party (or a corporate officer, if a corporation is the party seeking seizure of property), an attorney's verification is sufficient. Failure to verify the complaint will not automatically result in dismissal of the action, as the court will liberally allow amendments of complaints as to form as well as to substance. Amendment of pleadings is liberally allowed in admiralty cases.

29-704 Moore's Federal Practice § 704.01[3] (compiling cases); see also, Jones v. United States, 180 F. Supp. 425 (E.D. Pa. 1960) (holding amendment, rather than dismissal, the proper remedy for any failure to verify an admiralty pleading); accord, Joyce v. United States, 106 F. Supp. 719 (D.N.J. 1952).

The best authorities SGL can find to convince the Court that amendment, if necessary, should not be allowed to maintain the attachment in this case are Contichem LPG v. Parsons Shipping Co, 229 F.3d 426 (2d Cir. 2000), and T&O

-4-

Shipping Ltd. v. Source Link Co., No.06-7724 (KMK), 2006 U.S. Dist. LEXIS 88153, 2007 A.M.C. 224 (S.D.N.Y. Dec. 6, 2006).

But Contichem involved extraordinary and improper conduct of the plaintiff such that the court, in its discretion, was called upon to "determine whether ContiChem could accomplish indirectly, by means of an order restraining to-be-attached property, that which it could not do directly in light of the well-established prohibition against maritime attachments of after-acquired property." Contichem, 229 F.3d. at 433. Of course, there was no such extra-judicial holding of property outside of Rule B process or other procedural gamesmanship in this case. And this aspect of Contichem has never been applied to alleged technical deficiencies in Rule B pleadings, such as the form of verification.

Similarly, the T&O attachment was vacated because "Source Link was not named in the Complaint, no allegations were made against it, and the Attachment signed by this Court did not include Source Link Shipping." T&O, 2006 U.S. Dist. LEXIS 88153 at *22. Again, T&O involved "Plaintiff's usurpation of judicial process." Id. at *19. In the instant case, SGL was named as a party defendant in the Amended Complaint and the Order of Attachment; the restraint of SGL's funds was in full compliance with the Court's process.

-5-

The unique and totally incomparable circumstances of Contichem and T&O notwithstanding, it is clear that, even where there is a fatal deficiency in the pleading, unlike an attack on the mere form of a verification, the funds should be held pending amendment of the pleading.  In Tide Line, Inc. v. Eastrade Commodities, Inc., 06 Civ. 1979 (KMW), 2006 U.S. Dist. LEXIS 95870, 2006 A.M.C. 252 (S.D.N.Y. Aug. 15, 2006), the complaint's only substantive allegation against Transclear was that "'Defendant Transclear acts as paying agent, or arranges for other nonparties to satisfy the debts and obligations of defendant Eastrade.'"  Tide Line, 2006 U.S. Dist. LEXIS 95870, at **29-30.  While the Court held that this, alone, was inadequate to support a prima facie "alter-ego" claim against Transclear, it further held that "insofar as Tide Line has shown that it has a prima facie claim against Transclear on the basis of its proposed Amended Verified Complaint, the Court does not believe that the purposes of Supplemental Rules B and E would be served by vacating the Attachment Order as to Transclear."  Id. at *49.

As such, to the extent the Court may somehow find the verification lacking in any manner, plaintiff respectfully requests leave to file an amended pleading such that the attachment may be maintained.

-6-

**POINT III.       CALDER HAS ALLEGED A <u>PRIMA FACIE</u> MARITIME CLAIM UNDER RULE B.**

SGL has misstated the pertinent standard adopted by the courts of this district. While some courts have employed a "reasonable grounds" test, <u>Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.</u>, 460 F.3d 434 (2d Cir. 2006), held that the Court should look only to whether the <u>prima facie</u> requirements of Rule B have been met, <u>i.e.</u> that plaintiff alleges a maritime claim against the defendant, the defendant can not be found in the district, the defendant's property is in the district, and there is no other statutory or maritime law bar to the attachment. <u>Id.</u>

Since then, "'of the courts in this district to have considered the issue, the majority have interpreted *Aqua Stoli* to require the application of the *prima facie* standard when considering the adequacy of the claim asserted in the context of a maritime attachment.'" <u>Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transp. N.V.</u>, No. 07 Civ. 3076 (LAP), 2007 U.S. Dist. LEXIS 50260, *9 (S.D.N.Y. Jul. 6, 2007) (quoting <u>OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.</u>, No. 06-9441 (RWS), 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. Jun. 26, 2007) (citing cases)); <u>see also</u>, <u>Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.</u>, 07 Civ. 5798 (CM), 2007

-7-

U.S. Dist. LEXIS 74477, *22 (S.D.N.Y. Oct. 1, 2007) ("As a threshold matter, I reject defendants' presumption that the applicable standard to be applied to plaintiff's pleadings is the 'fair probability' standard. The majority of courts in this district have understood Aqua Stoli to require the application of the *prima facie* standard when considering the adequacy of a claim in a maritime vacatur Motion.") (compiling cases); SPL Shipping Ltd. v. Gujurat Cheminex Ltd., No. 06 Civ. 15375 (KMK), 2007 U.S. Dist. LEXIS 18562, *10 (S.D.N.Y. Mar. 15, 2007) ("Therefore, this Court will only look to Plaintiff's pleadings, and not to any evidence submitted by the Parties, to determine whether Plaintiff has made a legally sufficient claim.").

But, under any standard, "maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing." Id. at *12 (citing SPL Shipping Ltd. v. Gujurat Cheminex Ltd., No. 06-15375, 2007 U.S. Dist. LEXIS 18562, 2007 WL 831810, *2 (S.D.N.Y. Mar. 15, 2007)); see also, Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 280-281 (S.D.N.Y. 2006) (under "reasonable grounds" standard, declining to vacate Rule B attachment due to conflicting evidence concerning the parties to a fixture recap).

"To bring owners and charterers together, it is the custom of the industry to deal through brokers who receive and send telex traffic all over the world." Great Circle Lines, Ltd. v. Matheson & Co., 681 F.2d 121, 125 (2d Cir. 1982); see also, U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 149 (2d Cir. 2001) ("Under Great Circle Lines, the September 26, 1995 'recap,' which is 'a commitment that a voyage will be performed,' and one which 'presupposes a final contract, with main terms set, and final details to be resolved subsequently.") (quoting Great Circle, 681 F.2d at 125 n.2)); Interocean Shipping Co. v. National Shipping and Trading Corp., 523 F.2d 527, 537 (2d Cir. 1975) ("It is immaterial that De Salvo thought of himself as a 'broker' and not as an 'agent' of Hellenic or National or Interocean, or that H.T. did not intend to make De Salvo an agent. Agency is a legal concept which depends on the manifest conduct of the parties, not their intentions or beliefs as to what they have done.").

CALDER alleges that the party with which it contracted was known both as "SINORICHES GLOBAL LTD." and "SGL SHIPPING LIMITED." (Amended Complaint, Exhibit A to Pare Affidavit). And, in dealing with the motion previously brought by counsel purportedly appointed only for SINORICHES, these allegations

-9-

have already been found to state a <u>prima facie</u> claim for breach of a maritime contract as required by <u>Aqua Stoli</u>. (Exhibit C to Wolfson Declaration). First SINORICHES/SGL denied that it entered into the fixture with CALDER. Now SGL denies that it is one-and-the-same as SINORICHES. But, again, SGL's denial should have no bearing on the Court's analysis. CALDER's pleading alleges a contract with SGL, and no extrinsic evidence should even be considered.

However, should the Court nonetheless review the evidence outside of the pleading, SGL has, to be frank, been caught in a falsehood. The motion before the Court represents little more than a gambit perpetrated in the hope that no one reads Chinese. Even the most basic knowledge of Mandarin should be more than enough to recognize the characters for "Zhong Guo," or "China," or "Sino." But a professional translator was nonetheless retained for the benefit of the Court. (Exhibit A3 to Wolfson Declaration). The very Business Registration Certificate submitted earlier by SGL's counsel to support SGL's contention that it is a corporation separate and distinct from SINORICHES, as well as the SGL's funds transfer request, both read "SINORICHES," in Chinese, with "SGL" as the English translation below. (Exhibits A1-3 to Wolfson Declaration). Under any standard, this evidence more than

- 10 -

justifies the pleading.

To the extent the above is somehow insufficient, CALDER would seek leave to amend its complaint to allege SGL's liability in its capacity as a corporate alter-ego of SINORICHES. Indeed, CALDER was expressly notified by SINORICHES's admitted broker that freight would be paid in the name of "SGL," the new style for Charlie Wang's company. (Exhibit A8 to Wolfson Declaration). The signature on the SGL transfer request matches a known example of Mr. Wang's. (Exhibits A2 and 7 to Wolfson Declaration). And the relationship between Charlie Wang, who controlled SINORICHES, and SGL's Declarant, with each making freight payments and contracts on behalf of the other whenever convenient, is a matter of record. These facts should readily support leave to amend. See, Tide Line, Inc. v. Eastrade Commodities, Inc., 06 Civ. 1979 (KMW), 2006 U.S. Dist. LEXIS 95870, 2006 A.M.C. 252 (S.D.N.Y. Aug. 15, 2006)

**POINT IV.    IN REM JURISDICTION OVER EFT'S PURSUANT TO RULE B COMPORTS WITH CONSTITUTIONAL DUE PROCESS.**

It is nothing short of incredible that SGL makes the argument that the Supreme Court's holding in Shaffer v. Heitner, 433 U.S. 18 (1977), renders attachment of Electronic Funds Transfers (EFT's) insufficient to provide a basis for the Court to exercise jurisdiction over the res. This is precisely one of the arguments which was addressed at length and rejected in Winter Storm Shipping Limited v. TPI, 310 F.3d 263 (2d Cir. 2002), though this directly adverse, binding precedent was not cited for the Court in the course of SGL's briefing on the issue.

While other aspects of Winter Storm have been questioned, it remains "the law of this Circuit." Maersk, Inc. v. Neewra, Inc., 2006 U.S. Dist. LEXIS 73096, *2 (S.D.N.Y. Oct. 6, 2006); see also, Aqua Stoli, 460 F.3d at 436 ("Under the laws of this circuit, EFTs to or from a party are subject to a maritime attachment by a court as they pass through banks located in that court's jurisdiction."); Consub Delaware LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305, 311 (S.D.N.Y. 2007).

And certainly no extraordinary circumstances are present to warrant certification of an interlocutory appeal on this issue. See, Wilhelmsen Premier, 2007 U.S. Dist. LEXIS 74477,

at \*\*26-27; <u>Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co.</u>, No. 06 Civ. 13765 (WHP), 2007 WL 1002265, \*4, 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y. Apr. 4, 2007).

**CONCLUSION.**

WHEREFORE, plaintiff, CALDER SEACARRIER CORP., respectfully urges the Court to deny SGL's motion to vacate and grant to CALDER such other and further relief as this Honorable Court may deem just and proper.

Dated:   New York, New York
         October 19, 2007

                                Respectfully submitted,

                                MAHONEY & KEANE, LLP
                                Attorneys for Plaintiff
                                CALDER SEACARRIER CORP.

By: _____
     Garth S. Wolfson (GW 7700)
     111 Broadway, Tenth Floor
     New York, New York 10006
     (212) 385-1422
     Our File No. 12/3437