NOURSE & BOWLES, LLP
Attorneys for Defendant
SGL SHIPPING LIMITED
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CALDER SEACARRIER CORP.,                          :
                                                  :
                        Plaintiff,                :     **07 CV 6520 (LAK)**
                                                  :
        - against -                               :     **ECF CASE**
                                                  :
VIKING MARINE S.A. and SINORICHES                 :     **<u>REPLY AFFIDAVIT</u>**
GLOBAL LTD, a/k/a SGL SHIPPING                     :
LIMITED                                            :
                                                  :
                        Defendants.               :
------------------------------------------------------------------X

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF NEW YORK         )

        ARMAND M. PARÉ, JR., being duly sworn, deposes and says:

        1.      I am a member of the bar of this Honorable Court and a member of the firm of

Nourse & Bowles, LLP, attorneys for SGL Shipping Limited ("SGL Shipping") in this matter.

I make this reply affidavit in support of a motion on order to show cause and restricted

appearance under Supplemental Rules E(4)(f) and E(8) for Certain Admiralty and Maritime

Claims ("Supplemental Rules") of the Federal Rules of Civil Procedure to vacate certain

attachments and dismiss this action against SGL Shipping.

2.    Attached as Exhibit "A" is an additional declaration of Guoxian Yang of SGL Shipping made under penalty of perjury of the laws of the United States in accordance with 28 U.S. Code § 1746, together with its attached Exhibits "1"-"5".

3.    Attached as Exhibit "B" is a copy of relevant pages of an amicus brief filed in Consub Delaware LLC v. Schahin Engenharia Limitada, 07-0833-CV from which it will be noted that an issue raised by SGL Shipping regarding the case of Shaffer v. Heitner, 433 U.S. 186 (1977) is now before that Court of Appeals for the Second Circuit.

4.    Attached as Exhibit "C" are translations I received concerning the Chinese characters appearing on documents referred to by Plaintiff in answering papers.

_____
Armand M. Paré, Jr.  (AP 8575)

Sworn to and subscribed to before
me this 22nd day of October, 2007.

_____
Notary Public

Karlene S. Jackson, Notary Public
State of New York, #01JA5063169
Qual. In Queens Cty; New York Cty
Commission Expires November 17, 2009

# Exhibit A
## (Paré Affidavit)

## DECLARATION

Mr. Guoxian Yang states:

1.      I am the General Manager of SGL Shipping Limited ("SGL Shipping"). I read and speak English and have prepared this declaration with the help of SGL Shipping's attorneys including assistance with English translation. In this declaration I reply to allegations made in papers submitted by Calder Seacarrier Corp. ("Calder") including a declaration of Captain Pangiotis Mihilitsis.

2.      Captain Mihalitsis makes a number of self-serving allegations and some are based on statements or "impressions" of other people in support of Calder's claim that SGL Shipping and Sinoriches Globe Ltd. ("Sinoriches") are the same company and therefore Calder can attach funds of SGL Shipping. I address these below. First, however, I should state that I have never meet Captain Mihalitsis nor have I spoken with him. I have also not met or spoken with anyone from his Greek broker, Seapride. It is unclear to me how he or others can have any legitimate basis for "understandings" or "impressions" about SGL Shipping.

3.      Captain Mihalitsis claims "At all pertinent times" it was his "firm understanding" that Sinoriches "was and is one and the same as" SGL Shipping. Except for relying on a supposed translation of Chinese characters dated September 19, 2007 (after SGL Shipping's funds were attached), Captain Mihalitsis offers no support whatsoever for his "understanding." His "understanding" is contrary to clear facts. SGL Shipping is a company incorporated in Hong Kong with offices in Hong Kong and Shanghai, China. It has the lines of business I outlined in my prior declaration. I have pressed Sinoriches to assist SGL Shipping in this case and Sinoriches has provided me

*GUOXIAN YANG*

with a copy of its Certificate of Incorporation attached as Exhibit 1. As will be noted, it is a company incorporated in the British Virgin Islands. It will also be noted that it has no name in Chinese characters. I also obtained and attach as Exhibit "2" a copy of Sinoriches stock certificate showing that all its capital is owned by Deng Jin Jing. Sinoriches has an office in Dalian, China at the address listed in the stock certificate. The distance between Dalian and Shanghai is about 1,000 kilometers by air and much further by land. I note that Captain Mihalitsis offers no source for his "understanding" and not a single piece of paper despite the fact that his own Greek broker, Mr. Soukaras has been "fixing the cargoes of Sinoriches Dalian for a long time", including 6 specific vessels for Calder. I further note Mr. Soukaras does not confirm the "understanding" of Captain Mihalitsis. It seems strange to me that Calder would fix 6 ships with Sinoriches and not bother to add the name SGL Shipping to those fixtures if it "understood" SGL Shipping was another name for Sinoriches.

4.    As for Captain Mihalitsis' allegations about SGL Shipping's name in Chinese characters, I note Mr. Mihalitsis does not claim he reads Chinese so his "understanding" about this must be based entirely on the September 19, 2007 "translation." In any event, the Chinese characters used to designate a name in Chinese for SGL Shipping are not capable of any precise meaning in English as there is no one-to-one relationship with English words. The Chinese characters used could, for example, mean Chinese Luxury Shipping Company or Chinese Glory and so on. It is therefore quite incorrect to say that the Chinese characters have the definitive meaning in English Calder argues for and, it will be noted, the word "Global" as in "Sinoriches Global" is not included in their translation. There are, of course, no Chinese characters for the English

2

GUOXVAN YANG

letters "SGL" and hence a different name in Chinese characters was chosen. The name chosen in Chinese characters was not previously registered to any company, including Sinoriches.

5. I note that a one sentence e-mail is attached to Captain Mihalitsis declaration. This says "Charlie" will not revert funds "via his Ocean Link Navigation bank account but via his new company SGL Shipping Ltd." This certainly does not show that Sinoriches and SGL Shipping are "one and the same" company. Instead, it shows SGL Shipping will be used, like a bank, as it was used to transfer funds in the case of the VERA. This appears no different from a person saying that he is going to send funds through his new bank. This does not mean he owns the bank, as Calder wants to imply. Captain Mihalitsis states at paragraph 6 that "it is not common practice in the shipping industry for unaffiliated entities to make freight payments for one another." As I explained in my earlier declaration, it is common practice in China for companies such as SGL Shipping to make freight payments on behalf of others.

6. I assume the reference to "Charlie" in the above e-mail is to Charlie Wang. I know Charlie Wang and we have had business from time to time. However, Charlie Wang does not own stock in SGL Shipping and is not an officer, director or employee of the company and he did not sign SGL fund transfer requests. Captain Mihalitsis observes at paragraph 7 that the signature on the SGL Shipping funds transfer request was identical to the signature of Oceanlink and he guesses the signature is Charlie Wang. The person who signed the SGL Shipping transfer request is our authorized accountant secretary who is an employee of SGL Shipping's outside professional "Company Secretary" firm in Hong Kong. This is a common practice for Hong Kong companies with office in

3

*Guoxian Yang*

Mainland of China. Each company incorporated under the laws of Hong Kong shall open a bank account with a bank seated in Hong Kong, and all the transfers must be applied through the bank of deposit directly. In practice, the majority companies with office out of Hong Kong either send their original transfers request signed by courier to the bank, or authorize one person in Hong Kong, usually an employee of the bank or their professional outside Company Secretary firm, to sign it at any time they need. Signatures for SGL Shipping were done in this way by other third parties and I assume Oceanlink also did so and this is why signatures are same.

7.    Captain Mihalitsis expressed the view in paragraph 9 that an unnamed "broker" who fixed the PARADISE ISLAND on behalf of its owners, Allied Maritime, had the "impression" that that vessel was not fixed with BTB International (on whose behalf SGL Shipping transferred freight) but, instead, the broker "understood" the vessel was fixed "to none other than SINORICHES." Again, nothing other than a self-serving allegation by an unknown person is offered in support of this. I have also pressed BTB Shipping into providing assistance in responding. Attached as Exhibit "3" is correspondence from the owners of the PARADISE ISLAND, Allied Maritime, complaining to BTB International that it had not paid freight. (It was SGL Shipping's funds which were sent to make this payment and this was attached as outlined in my prior declaration in paragraph 8). This show that Allied Maritime clearly dealt with BTB International. I also attached to my prior declaration a copy of the fixture between BTB International and Allied Maritime for the PARADISE ISLAND.

8.    Captain Mihalitsis asserts at paragraph 10 that he "knows SGL's declarant, Guoxian Yang to be the General manager of Far East International Shanghai Agency

4

GUOXIAN YANG

(FEISA), a partner and/or associate of Mr. Wang." I am not the General Manager of FEISA nor a partner or associate of Mr. Wang. I own a small 6% stake in FEISA as shown in the attached Articles of Incorporation (Exhibit "4"). As will also be noted, Mr. Charlie Wang owns no stock in that company. As shown in Exhibit "5", a legal representative, i.e. the person who controls FEISA, is Zhao Guoliang.

9.      I note that FEISA is listed, together with my name as an agent for the vessel YALENA SHARTROVA in a fixture from 2005. There is nothing unusual about this as FEISA frequently acts as agent in this capacity. I also note there appears to be some issue in that case that Mr. Wang entered into that fixture without authority. I have no knowledge about that. Captain Mihalitsis also says in paragraph 10 that I corresponded on "operational details" for Sinoriches. I do not know what he is referring to but it is possible that a company I worked for acted as an agent for Sinoriches. That is entirely normal.

10.     Although our New York attorneys have reported that Sinoriches had made a motion, I was not aware that that motion had been denied. The funds of $568,118.32 and $81,041.22 that have been attached are the funds of SGL Shipping and we have been preparing a motion to vacate these attachments for some time after futile attempts to convince Calder through our attorneys to vacate the attachments.

11.     In summary, SGL Shipping and Sinoriches are entirely separate companies. There is no basis for any "understanding" that they are the same. Similarly, there is no basis for any "impression" that Sinoriches and not BTB International was the charterer of the PARADISE ISLAND). Insofar as Charlie Wang is concerned, although we have had

5

GUOXIAN YANG

2007年10月22日 23:18

business together, we are not "partners" or "associates". Our companies are entirely

separate and any business we have had has been entirely normal.

I declare under penalty of perjury of the laws of the United States of America that

the foregoing is true and correct.

_____
                Guoxian Yang

Dated: Shanghai, China
       October 22, 2007

# Exhibit 1
## *(Guoxian Decl.)*

*Exhibit 1*
*(Guoxian Decl)*



TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE INTERNATIONAL BUSINESS COMPANIES ACT
(CAP. 291)

CERTIFICATE OF INCORPORATION    (SECTIONS 14 AND 15)

No. 349665

The Registrar of Companies of the British Virgin Islands HEREBY CERTIFIES pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied,

SINORICHES GLOBAL LIMITED

is incorporated in the British Virgin Islands as an International Business Company this 26th day of October, 1999.

Given under my hand and seal at Road Town, in the Territory of the British Virgin Islands

REGISTRAR OF COMPANIES

CRII001XJ

# Exhibit 2
## *(Guoxian Decl.)*

*Exhibit 2*
*(Guoxian Decl)*



Share Certificate

# Sinoriches Global Limited

Incorporated under the Laws of the Territory of the British Virgin Islands

**NUMBER OF SHARES**

NOMINAL CAPITAL U.S. $50,000.00 DIVIDED INTO 50,000 SHARES
PAR VALUE U.S. $1.00 EACH

CERTIFICATE NUMBER

THIS IS TO CERTIFY THAT          Deng Jin Jing

of   Room A2715 No.30 Wuwu Road, Dalian, China          is/are the registered holder(s)

of  50,000          share(s) of U.S. $1.00 (each)

numbered            1          inclusive in Sinoriches Global Limited, subject to the

Memorandum and Articles of Association of Sinoriches Global Limited.

Dated this          day of   December 11   1999.

_____
Director

_____
Director

*No transfer of the above mentioned shares will be registered until this Certificate
has been deposited at the office of Sinoriches Global Limited.*

2

# Exhibit 3
## *(Guoxian Decl.)*

*Exhibit 3*
*(Guoxian Decl)*

From:    <legal@allied.gr>
To: "btb shipping"    <shanghai@btb.com.cn>
Sent: Friday, September 14, 2007 6:39 PM
Subject: Re: UNPAID FREIGHT - BTB - M/V PARADISE ISLAND - URGENT


> _____
>
>              A L L I E D    M A R I T I M E    I N C
>                3, G.Drossini St, Voula, Athens 166 73
>        Tel: 0030-210-9657116/9658660/9658843    Fax: 0030-210-9657175
>                E-mail: legal@allied.gr    Tlx: 214016 ALMA GR
> _____
>
> Ref: 14/09/07/13:39:27.REF:162539-LAW
>
>
> Dear Mr. Zhang,
>
> Further to our message of yesterday (which we copy below for your ease of reference) we
should much appreciate your urgent response to this matter.
>
> While we note well your earlier comments you will appreciate that we have a contractual
relationship under which frieght has not been received by us. We have presented to you how this
matter can in the immediate term be progressed but however we require your response as soon as
possible.
>
> Kind regard,
> Alan Parr
> Solicitor
> Legal Department
> ALLIED MARITIME INC.
>
>
>

3

发件人： legal@allied.gr
发送时间： 2007-09-25 19:27:02
收件人： btb shipping
抄送：
主题： RE: m/v PARADISE ISLAND - OUTSTANDING FREIGHT (US$590,252.80)


From: Allied Maritime Inc.        25/09/07/14:29:54.REF:165050-LAW

To: BTB Intl Trading & Transportation
cc:

Dear Mr Zhang,

Further to our previous messages, the last resting with our message of 19/09, we note we have neither received a response from you nor indeed have we received payment of the outstanding freight as above you owe to us pursuant to our governing charterparty.

Your failure to pay and the single message from yourselves to us indicate that you are not taking action to pay your debt.

The consequence of your failure to pay this outstanding amount is that we shall seek to attach, arrest, freeze and detain your assets worldwide for the entire amount plus costs.

Additionally, should you fail to make payment by 30th September we shall also, (while maintaining full recovery from yourselves for the entire amount), be entitled to pursue also your Guarantor, for the whole amount. We have made this quite clear to them also.

We trust the above clarifies and requires your urgent attention and immediate action.

We fully reserve our rights against you including our rights to act without further notice to you.


Kind regards,
Alan Parr
Solicitor
Legal Department
ALLIED MARITIME INC.


[Message sent via SOFTWAY Communicator]
  --
This message has been scanned for viruses and
dangerous content by MailScanner, and is
believed to be clean.

# Exhibit 4
## *(Guoxian Decl.)*

*Exhibit 4*
*(Guoxian Decl)*

[Free English translation]

## Articles of Corporation of Shanghai Fareast
## International Shipping Agency Co., Ltd.

**Chapter II Name and Principal place of business**

**Article3.**Name: Shanghai Fareast International Shipping Agency Co., Ltd.
Principal place of business: 13F, No.133, Tiantong Road, Shanghai.

**Chapter III Business Scope**

1) **Article4.** Business Scope:  Business of international shipping agency for Chinese or foreign vessels at Port of Shanghai: producing the documents, signing B/L, conclusion of contract of carriage and the dispatch/demurrage agreements for and on behalf of the owners, acting for collecting freight for owners or paying freight for charterer; custom declaration; handling shipment and forwarding, canvassing and organizing passengers, negotiation allocation, arrange salvage at sea, assisting to deal with sea average, acting for dealing with the relevant matters concerning vessel, crews, passengers or cargo, matters concerning to NVOCC.

**Chapter IV Registered Capital, the Construct of Stock and Method of Capital Contributions**

**Article5.** The registered capital of this company is RMB3,000,000.

**Article6.** The stockholders of this company: the core members of business and business managers of Shandong Fareast International Shipping Agency Co., Ltd and Shanghai Fareast International Shipping Agency Co., Ltd.

**Article7.** Construction of shareholder is as follows:
Shandong, Far East International Shipping Agency Co., Ltd. RMB1,500,000.

| | |
|---|---|
| Han Wulin, RMB300,000. | Hu Zhibin, RMB150,000. |
| Wang Junwei, RMB120,000. | Yong Baoguo, RMB120,000. |
| Wang Decheng, RMB120,000. | Huang Ying, RMB90,000. |
| Yang Guoxian, RMB90,000. | Zhang Yuan, RMB60,000. |
| Hu Wei, RMB30,000. | Zhou Kai, RMB30,000. |
| Gu Jinfa, RMB30,000. | Zhao Guoliang, RMB120,000. |
| Li Zhensheng, RMB30,000. | Sun Jianzhu, RMB150,000. |
| Wang Gang, RMB30,000. | Xie Yuntao, RMB30,000. |

4

FEISA

# 上海远东环球国际船舶代理有限公司章程

## 第一章 总 则

第一条 为适应社会主义市场经济发展的要求，规范公司的组织和行为，保护公司股东的正当权益，根据《中华人民共和国公司法》和其他有关法律、法规制定本章程。本章程为公司的行为准则，公司全体股东和员工必须严格遵守。

第二条 公司宗旨是：为船舶所有人及其经营人、货物所有人及其经纪人、集装箱关系人以及其他委托人提供优质服务，维护其正常权益，努力提高经济效益，为我国对外经济贸易运输贡献力量。

## 第二章 公司名称和住所

第三条 公司名称：上海远东环球国际船舶代理有限公司；公司住所：上海市天潼路133号13楼。

## 第三章 公司的经营范围

第四条 经营范围：在上海口岸经营中外籍国际船舶代理业务：缮制单证、代签提单、运输合同、速遣滞期协议，代收代付款项；办理船舶进出港手续，联系安排引水、靠泊、装卸；报关，办理货物的托运和中转；揽货和组织客源，洽订舱位；联系水上救助，协助处理海商海事；代办船舶、船员、旅客或货物的有关事项。

## 第四章 注册资本、股份构成及出资方式

第五条 公司注册资本为300万元人民币。

第六条 公司股东的组成：山东远东国际船舶代理有限公司、上海远东

环球国际船舶代理有限公司的经营管理人员及业务骨干和山东远东国际船舶代理有限公司的经营管理人员及业务骨干。

第七条　公司全部股份构成如下：

山东远东国际船舶代理有限公司出资 150 万元；

| | |
|---|---|
| 韩武林出资 30 万元； | 胡智斌出资 15 万元； |
| 王军威出资 12 万元； | 勇保国出资 12 万元； |
| 王德成出资 12 万元； | 黄　英出资 9 万元； |
| 杨国先出资 9 万元； | 张　媛出资 6 万元； |
| 胡　薇出资 3 万元； | 周　凯出资 3 万元； |
| 顾金发出资 3 万元； | 赵国良出资 12 万元； |
| 李振盛出资 3 万元； | 孙建祝出资 15 万元； |
| 王　刚出资 3 万元； | 解云涛出资 3 万元； |

第八条　公司成立后向股东签发出资证明书，出资证明书名称为："上海远东环球国际船舶代理有限公司出资证明书"。出资证明书经执行董事签名盖章、公司盖章后生效。

出资证明书应当载明下列事项：

（一）公司名称、住所；

（二）公司登记的日期；

（三）公司注册资本；

（四）股东的姓名或者名称、缴纳的出资额和出资日期；

（五）出资证明书的编号和核发日期。

股东出资证明一式两份，一份交股东，一份留公司备案。

第九条　公司应置备各股东花名册，并记载下列事项：

（一）股东的姓名或者名称及住所；

（二）股东的出资额及出资日期；

（三）出资证明书编码。

### 第五章　股东的权利和义务

第十条　股东享有如下权利：

—2—

# Exhibit 5
## *(Guoxian Decl.)*

*Exhibit 5*
*(Guoxian Decl)*

# Certificate of Corporation

## (True Copy)

Registration No. 3101091017663

**Name:** SHANGHAI FAREAST INT'L SHIPPING AGENCY LTD

**Address:** 13F, No.133, Tiantong Road,

**Legal representative:** Zhao Guoliang

**Registered Capital:** RMB 3,000,000.00

**Business Style:** Limited Liability Company (Domestic Joint Capital)

**Business scope:** Business of international shipping agency for Chinese or foreign vessels at Port of Shanghai: producing the documents, signing B/L, carriage contract and the dispatch/demurrage agreements for and on behalf of the owners, acting for collecting freight for owners or paying freight for charterer; carrying out the import and export procedures for the ships, contacting and arranging the matters concerning pilotage, berth, and loading/discharging; clearing customs; arranging the cargo shipments and transfer; searching cargo and organizing the passengers; booking space; arranging for maritime salvage and assisting to settle maritime affairs; acting for dealing with the relevant matters concerning vessel, crews, passengers or cargo. Business of NVOCC (managing pursuant to license if any)

**Duration:** from 12 October 2000 to 11 October 2020

**Date of Establishment:** 12 October 2000

5

# 企业法人营业执照

## （副 本）

注册号 · 31010910017663

| 名 | 称 | 上海远东环球国际船舶代理有限公司 |
|---|---|---|
| 住 | 所 | 天潼路133号13楼 |
| 法定代表人 | | 赵国梁 |
| 注册资本 | | 人民币叁佰万元 |
| 企业类型 | | 有限责任公司（国内合资） |
| 经营范围 | | 在上海口岸经营中外籍国际船舶代理业务；铸制准证代签提单、运输合同、速遣滞期协议、代收代付表费、办理船进出港手续、联系安排引水、靠泊、装卸、报关、报检、调载、理顺货物的托运和中转；联系和组织货源、洽定航位；联系水上装卸的协助和处理海商海事；代办船舶的供应、旅游或其他的有关事项、无限承运运业务（凡涉及许可经营的凭许可证经营）。 |

| 营业期限 | 自 二〇〇〇年十月十二日至 二〇三〇年十月十一日 |
|---|---|
| 成立日期 | 二〇〇〇年十月十二日 |

---

说 明

1. 《企业法人营业执照》是企业取得企业法人资格和合法经营的凭证。
2. 《企业法人营业执照》分正本和副本，正本和副本具有同等法律效力，营业执照正本应放在企业法人住所或者主要经营场所的醒目位置，企业法人可根据业务需要，向登记机关申请领取若干副本。
3. 营业执照不得伪造、涂改、出租、出借、转让，除登记机关外，其他任何单位和个人不得扣留、收缴和吊销。
4. 企业法人应当依照核定的经营范围从事经营活动。
5. 企业法人登记注册事项发生变化时，应向原登记机关申请变更登记。
6. 每年一月一日至四月三十日，登记机关对企业执照进行年度检验。
7. 企业在领取执照后，应按照登记机关确认的日期开始营业。企业执照遗失或毁坏，应当依执照正本声明作废，并向登记机关申请补领或更换。
8. 企业注销或被吊销执照时，应交回营业执照正本、副本。未按规定缴回营业执照的，营业执照自企业注销登记或被吊销之日起即自行失效。

企业法人年度情况

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

证照编号：0900000120050220017
企业标识码：09000001200501200065

登记机关 上海市工商行政管理局

执照有效期自 二〇〇五年六月十五日 至 2007年10月08日

二〇〇五年 六 月 二十二 日

（注意：在每年2月15日前，到国工商登记机关申领年检报告书。）

# Exhibit B
## *(Paré Affidavit)*

# 07-0833-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

CONSUB DELAWARE LLC,

*Plaintiff-Appellee,*

—against—

SCHAHIN ENGENHARIA LIMITADA,

*Defendant-Appellant,*

STANDARD CHARTERED BANK,

*Garnishee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR *AMICUS CURIAE***
**THE CLEARING HOUSE ASSOCIATION L.L.C.**
**IN SUPPORT OF DEFENDANT-APPELLANT**

BRUCE E. CLARK
*Counsel of Record for*
    *The Clearing House Association L.L.C.*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

H. RODGIN COHEN
MICHAEL M. WISEMAN
LAURENT S. WIESEL
SCOTT A. RADER
    *Of Counsel*

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................1

STATEMENT OF INTEREST OF AMICUS CURIAE ...........................9

BACKGROUND ...............................................................................11

      1.    Background Regarding Funds Transfers ...................12

      2.    The Burden of the Current Maritime Attachment Process in this Circuit.................................................................15

      3.    The Decision Below.................................................15

ARGUMENT ...............................................................................16

    I.    THE CLEARING HOUSE RESPECTFULLY CONTENDS THAT THIS COURT SHOULD OVERRULE ITS DECISION IN *WINTER STORM* AND VACATE THE ORDER BELOW ...........................................................17

        1.    *Winter Storm's* Reliance on *Daccarett* Was in Error ...............18

        2.    Supplemental Rule B Does Not Create Property Right............22

    II.    *WINTER STORM* FAILED PROPERLY TO ADDRESS THE DUE PROCESS CONCERNS INHERENT IN THE ATTACHMENT OF FUNDS TRANSFERS ...................................26

CONCLUSION.................................................................................29

## II.  *WINTER STORM* FAILED PROPERLY TO ADDRESS THE DUE PROCESS CONCERNS INHERENT IN THE ATTACHMENT OF FUNDS TRANSFERS.

Defendant-Appellant Schahin does not appear to have significant contacts, if any, with New York.  Indeed, for its property to have been *prima facie* subject to a Rule B attachment, Plaintiff-Appellee was required to attest, pursuant to Supplemental Rule B(1)(b), that Schahin could not be found within the Southern District of New York.  (*See* A-18).  Moreover, the funds transfer at issue in this appeal was meant to effect payment from one foreign account to another.  A New York bank was involved as an intermediary bank only because the payment was denominated in U.S. dollars.  Concededly, Schahin does not appear to have objected to the district court's assumption of *quasi in rem* jurisdiction over it – again because of a questionable ruling in *Winter Storm*.  This Court should, however, consider the important issue of whether such a "contact" is by itself sufficient to constitute minimum contacts to satisfy due process.

The Clearing House respectfully submits that *Winter Storm* also erred in analyzing the substantive due process concerns raised by the defendant in that case, with the result that litigants have been misled into believing that access to the procedures set forth in Supplemental Rule E for vacating an attachment are

sufficient to address any constitutional concerns that a Rule B attachment might create. *See Winter Storm*, 310 F.3d at 273.

But the 1985 amendments to the Supplemental Rules only addressed the *procedural* due process requirement that a party be given notice and an opportunity to be heard promptly after the arrest or attachment of its property. In contrast, *substantive* due process requirements demand that the relationship between the defendant, the forum, and the litigation provide the "minimum contacts" between the defendant and the forum state such that a court's assumption of jurisdiction does not offend traditional notions of "fair play and substantial justice." *Shaffer* v. *Heitner*, 433 U.S. 186, 207 (1977).

This Court's earlier decisions weighing due process considerations arising from Rule B attachments suggest that that the well known "minimum contacts"/"fair play" rule set forth in *Shaffer* apply in maritime and admiralty cases, but "must be understood in the light of the special history and circumstances of that unique body of law." *Amoco Overseas Oil Co.* v. *Amoco Transport Co.*, 605 F.2d 648, 655 n.7 (2d Cir. 1979); *see also* George Arceneaux III, *Has Shaffer v. Heitner Been Lost At Sea?*, 46 La. L. Rev. 141, 155 (1985) (observing that although *Amoco* recognized the "distinct nature of admiralty," "that difference

should not make *Shaffer* inapplicable – it should only present another factual element to be weighed in determining whether an assertion of jurisdiction is fair").

As the jurisprudence in existence prior to *Winter Storm* makes clear, there is nothing in the "special history and circumstances" of maritime and admiralty law that suggests that every originator or beneficiary of an EFT, who happens to be involved in maritime commerce, is automatically deemed to have the requisite minimum contacts in New York to be subject to litigation here. Indeed, nothing about *Winter Storm* or its progeny suggests that the amount of a funds transfer subject to attachment under Rule B must relate in some way to the matter under controversy, *i.e.*, the maritime claim being asserted, or even reflect a payment in connection with maritime commerce.

Unless every entity that even occasionally engages in maritime commerce, or does business with an entity engaged in maritime commerce, and that initiates or is to receive a U.S.-dollar-denominated funds transfer is deemed to submit itself to jurisdiction in New York, it cannot be sued here on that basis alone consistent with Constitutional substantive due process requirements. Whatever lesser minimum contacts or broader concepts of fair play exist in maritime cases, something more than this happenstance must be involved.

# Exhibit C
## *(Paré Affidavit)*

*Exhibit C*
*(Paré Affidavit)*

# TRANSLATION A CES
### INC.

29 Broadway ◆ Suite 2301
New York, NY 10006-3279
T ◆ (212) 269-4660  F ◆ (212) 269-4662

◆ transaces@aol.com
◆ translationaces.com

## FAX TRANSMITTAL SHEET

DATE:      10/22/07

TO:      Jay Paré, Esq.

AT:      Nourse & Bowles Esqs.

FROM:      Karyn Tasens

RE:      Our_____      Your:_____

Number of pages faxed here, including this page: 2

If you do not receive all pages, please call (212) 269-4660.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In confirmation of our telephone conversation of earlier today re the attached page of Chinese and English Business Reg. Form,
the name in Chinese appearing on the line above "SGL SHIPPING LIMITED" to the right of the indication "Name of Business Corporation" literally reads, when transliterated in the traditional transliteration system used for Hong Kong and Taiwan:

CHUNG-FU SHIPPING CO. LTD.

If it were transliterated in the system used for the People's Republic of China (mainland China), it would read:

ZHONG-FA SHIPPING CO. LTD., just a slightly different pronunciation.

The 'characters' CHUNG-FU do not really have any specific meaning; they can mean "Center Abundant" or a thousand other things.

We hope this is helpful.

Case 1:07-cv-06520-LAK Document 23-5 Filed 10/19/2007 Page 3 of 6



表格 2
**FORM 2**
(商業登記條例) (第 310 章)
**BUSINESS REGISTRATION ORDINANCE (Chapter 310)**
《商業登記規例》
**BUSINESS REGISTRATION REGULATIONS**
商業／分行登記證
*Business/Branch Registration Certificate*

**業務/法團所用名稱**
**Name of Business/**
**Corporation**

中富船務有限公司
SGL SHIPPING LIMITED

**業務/分行名稱**
**Business/**
**Branch Name**

************************************
************************************

**地　址**
**Address**

RM 301-2 3/F
HANG SENG WANCHAI BLDG
200 HENNESSY RD WANCHAI
HK

**業務性質**
**Nature of Business**

SHIPPING

**法律地位**
**Status**

BODY CORPORATE

| 生效日期<br>Date of Commencement | 屆滿日期<br>Date of Expiry | 登記證號碼<br>Certificate No. | 登記費及徵費<br>Fee and Levy |
|---|---|---|---|
| 21/04/2007 | 20/04/2008 | 36670100-000-04-07-8 | $2,600 |

(登記費 FEE $2,000)
(徵費 LEVY $ 600)

**見註釋下列 (商業登記條例) 的規定 (SEE OVERLEAF FOR ENGLISH VERSION)**

第 6(4) 條規定凡任何根據出商業登記證或分行登記證，不得當作證實以下意思：有關該業務或氣務的人士受僱於該業務的僱員，或任何被註冊人已遵從註。

第 7(2) 條規定任何登記的訴訟人士，倘在現有商業登記證副本尚未有收到通款通知書，須於 1 個月內以書面通知稅務局局長。

第 8 條規定凡申請註冊而有列於業務評情有任何變更或及凡某項業務已給來，任何營者有關業務的人或任何申給來前經營該項業務的人須於發生變更或業務某項結束時超於 1 個月內，以書面通知局長。

第 12 條規定各業務於其實有的商業登記證或有效的分行登記證須於一昭著地點展示。

第 15(1) 條規定違反上述列要可推行的罰則，包括罰款 $5,000 及監禁 1 年。

第 21 條規定收取批業所得的全部款項應繳付西屬欠薪保障基金。

**款時務須同商業登記證與徵費通知書完整交出。在付款後，未繳款通知書方成為有效的商業登記證。**
**PLEASE PRODUCE THIS CERTIFICATE AND DEMAND NOTE INTACT AT TIME OF PAYMENT. THIS DEMAND NOTE**
**WILL ONLY BECOME A VALID BUSINESS REGISTRATION CERTIFICATE UPON PAYMENT.**

現印所示登記費及徵費以印刷 (請參閱背頁繳費辦法所載內容)
RECEIVED FEE AND LEVY HERE STATED IN PRINTED FIGURES. (Please see payment Instructions overleaf)

ADR 示 1015 收 日期 01/05/2007 899313876 $2,600.00