**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

CALDER SEACARRIER CORP.,          :
                                    :
               **Plaintiff,**      :
                                    :     07 CV 6520 (LAK)
    - against -             :
                                    :
VIKING MARINE S.A. and SINORICHES  :
GLOBAL LTD, a/k/a SGL SHIPPING    :
LIMITED                               :
                                    :
              **Defendants.**     :
                                    :
--------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO VACATE ATTACHMENT AND**
**<u>DISMISS ACTION AGAINST SGL SHIPPING LIMITED</u>**


**NOURSE & BOWLES, LLP**
**Attorneys for Defendant**
**SGL SHIPPING LIMITED**
**One Exchange Plaza**
**At 55 Broadway**
**New York, NY  10006-3030**
**(212) 952-6200**

NOURSE & BOWLES, LLP
Attorneys for Defendant
SGL SHIPPING LIMITED
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CALDER SEACARRIER CORP.,                          :
                                                   :
                         Plaintiff,                :
                                                   :        07 CV 6520 (LAK)
          - against -                              :
                                                   :
VIKING MARINE S.A. and SINORICHES                  :
GLOBAL LTD, a/k/a SGL SHIPPING                      :
LIMITED                                            :
                                                   :
                         Defendants.               :
                                                   :

------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO VACATE ATTACHMENT AND
## DISMISS ACTION AGAINST SGL SHIPPING LIMITED

### Introductory Statement

This reply memorandum ("Reply Memorandum") is submitted on behalf of SGL

Shipping Limited ("SGL Shipping") in reply to the answering papers of plaintiff, Calder

Seacarrier Corp. ("Calder" or "Plaintiff") and in further support of SGL Shipping's order

to show cause, under Rule E(4) and E(8) of the Supplemental Rules for Certain

Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental

Rules") to vacate certain attachments of its property levied by Calder in support of claims

Calder apparently has against defendant, Sinoriches Global Ltd. ("Sinoriches") in the amount of $1,950,684 and only derivatively against SGL Shipping on the allegation that Sinoriches is "a/k/a" SGL Shipping. Most importantly, the attached wire transfers in the amount of $568,092.32 and $81,041.22 have nothing to do with this case or Sinoriches and are the product of arm's length transactions between SGL Shipping and its customers.

## Summary of Facts

In its First Amended Complaint dated august 1, 2007, Calder asserted a claim against Sinoriches in the amount of almost 2 million dollars. In the preamble, it alleged Sinoriches is "a/k/a" SGL Shipping. SGL Shipping has provided declarations denying this and showing how the two companies, which are located in cities distant from one another in China, are entirely separate. In answer, Calder now claims the two are alter egos on the following allegations from Calder's chartering manager, Captain Milhaltsis, who is located in Athens, Greece:

1.  at "all pertinent times" Captain Mihalitsis had a "firm understanding" that Sinoriches was "one and the same as SGL Shipping (Mihalitsis declaration at ¶ 3). However,

    - Captain Mihalitsis offers virtually nothing to back up his "understanding" which is all the more strange since Calder chartered no fewer than 6 vessels to Sinoriches. The proof shows SGL Shipping and Sinoriches to be separately incorporated, owned and run by different

people and each located in distant cities. Significantly, the attached

funds in question of SGL Shipping are in no way related to Sinoriches.

- Captain Mihalitsis does not appear to speak or read Chinese yet offers,

   for his "understanding" at "all pertinent times," a translation of certain

   Chinese characters (which is more of an argument about what Chinese

   characters might possibly mean) dated September 19, 2007. As shown

   in attached declarations, there is no precise English translation. In fact,

   even Calder's argued the translation is missing the word "Global" from

   "Sinoriches Global." Sinoriches is a British Virgin Islands Company

   and, so far as is known, has no name in Chinese charters.

2.    SGL made payments on the VERA on behalf of Sinoriches. However, as

explained in the declaration of Guoxian Yang of SGL Shipping, this was

done in the normal course of its business in transferring funds on behalf of

other companies. This transfer, like others, was entirely normal. In all

events, it is *not* the subject of the present attachments which have nothing

to do with Sinoriches.

3.    It is the "impression" of an unnamed broker that the PARADISE ISLAND

(one of the attached fund transfers) was chartered by it owners, Allied

Maritime, not to BTB International but, instead, to Sinoriches and hence it

is urged the transfer made by SGL Shipping for BTB International was

actually made for Sinoriches. However,

- There is no basis offered for the "impression"

3

- BTB International/Allied Maritime fixture and correspondence between these companies clearly belies this "impression" and shows the fixture was between BTB International and Allied Maritime and Sinoriches had no involvement.

4.   Mr. Mihalitsis "knows SGL's declarant, Guoxian Yang, to be the General Manager of Far East International Shanghai Agency (FEISA), a partner and/or associate of Mr. Wang."  However,

- Captain Mihalitsis "knowledge" is entirely faulty.  Mr. Guoxian Yang is not the General manager of FEISA, has a small 6% interest in the company, Mr. Wang owns no interest in that company and Mr. Guoxian Yang and Mr. Charles Wang are not otherwise "partners and/or associates".

5.   Charlie Wang was involved in another fixture in which he appears not to have authority to enter into a charter and FEISA and Mr. Guoxian Yang are listed as an agent in the charter.  However,

- It is an entirely routine, arm's length business transaction for FEISA and Mr. Guoxian Yang to act as agents and there is no suggestion that they had any knowledge of Mr. Wang's lack of authority.

In short, the "proof" of SGL Shipping being an alleged alter ego of Sinoriches is either based entirely on self-serving innuendo, "understandings" and "impressions" generated by Calder only.  As outlined in our original memorandum, ex parte pre-

4

judgment attachments raise constitutional concerns.  It is respectfully submitted that more than unproven "understandings" and "impressions" by the party seeking to justify an attachment should be required.  In all events, the proof shows that the two attachment funds in question have nothing to do with the case or Sinoriches.

**POINT I**

**CALDER HAS FAILED IN ITS BURDEN OF
PROOF TO SHOW IT HAD OR HAS ADEQUATE BASIS
FOR CLAIMING AGAINST SGL SHIPPING
AT THE TIME OF ITS FIRST AMENDED COMPLAINT**

Rule B of the Supplement Rules is clear that a complaint must be verified.  The obvious reason for this is to have some safeguard that there is a sound basis for an <u>ex parte</u> attachment.  It appears no verification was provided with the original Complaint or the First Amended Complaint.  Apparently, however, at the Court's direction, further particulars of Plaintiff's First Amended Complaint were sought by the Court and an affidavit provided (which is not on file).  A review of the affidavit shows on the central issue, that there is, like the First Amended Complaint itself, *no* particular allegation against SGL Shipping other than a glib, back-handed statement, made "upon information and belief" that Sinoriches is "a/k/a SGL Shipping.  The preamble states:

> "Defendant VIKING, entered into a fixture with
> SINORICHES GLOBAL LTD., a/k/a SGL SHIPPING
> LIMITED ("SINORICHES"). . . .  A copy of the fixture is
> herewith attached as Exhibit "C"."

No copy of this fixture, attachment "C", was provided with Calder's answering papers but we presume it is with Sinoriches only and not with SGL Shipping.  However, aside

5

from Captain Mihalitsis "understandings" and his recent inquires of broker's "impressions", there appears to be nothing to support an assertion, whether by affidavit or verification, on August 1, 2007 that Sinoriches was also known as SGL Shipping. Certainly the ambiguous translation of Chinese characters now offered is dated 1 ½ months later. Based on what has now been offered, it appears there was no adequate basis for any pleading against SGL Shipping on August 1, 2007. In the circumstances, the attachment should not now be validated after-the-fact based on obviously new claims of support and control in its answering papers. If the attachment was defective when served, it should not be allowed to be "propered up" by later events. See Contichem LPG v. Parson Shipping Ltd., 229 F.3d 426, 434-5 (2d Cir. 2000) and T&O Shipping Ltd. v. Source Link Co., Ltd., 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. 2006) *22.

As has already been pointed out, there is a split in the decisions of this Court over whether a mere allegation of an alter ego nature is sufficient to survive a challenge to an attachment or whether reasonable grounds to support an alter ego allegation are required. It is respectfully submitted that, because of constitutional concerns, reasonable grounds should be required and these do not exist here.

## POINT II

### ATTACHMENTS OF THE EFTs DO
### NOT PROVIDE SUFFICIENT JURISDICTION

SGL Shipping has previously outlined why that an attachment of an EFT does not satisfy "minimum contact" under Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569 (1977).

6

Calder expresses surprise that this point should be raised in light of Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002), cert. denied, 539 U.S. 927 (2003).  In the first place, Winter Storm, itself has been criticized, Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd., 460 F.3d 434 (2d Cir. 2006), n. 6.  ("The correctness of our decision in Winter Storm seems open to question . . .").  In fact, that decision and this precise issue are currently up for appeal in a case cited by Calder, Consub Delaware LLC v. Schahin Engeharia Limitada, 476 F. Supp.2d 305 (S.D.N.Y. 2007).  See Exhibit "B" to the affidavit of Armand M. Paré).

With due respect to Judge Haight, sitting by designation in Winter Storm, his analysis gives little attention to Shaffer and Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648 (2d Cir. 1979).  Clearly, the Second Circuit, in Amoco, recognized that Shaffer had to be taken into account even in maritime cases but, in that case, minimum contacts were found to exist.  In Winter Storm, however, Judge Haight refused to recognize that critical point, and, instead, dismissed Amoco (on the grounds it was not "square holding" 310 F.3d at 271.  This also dismisses the core constitutional concern in Shaffer.  Judge Haight then went on to discuss procedural due process (as opposed to substantive due process) and found, quite correctly, that the Supplement Rules do, as in this case, provide a prompt hearing.  As to the ruling on substantive  due process, however, Winter Storm is deficient in failing to take Shaffer into account in a maritime case.  Constitutional concerns cannot be brushed aside simply by saying 'maritime is different'.  There must, in *any* case, be sufficient minimum

contacts for personal jurisdiction to exist.  In the case of the attachments of the EFTs in question there is none.

### Conclusion

It is respectfully submitted that for the foregoing reasons and for the reasons outlined in SGL Shipping's original Order to Show Cause and accompanying papers, the attachments in this case in the amounts of $568,092.32 and $81,041.22 should be vacated forthwith and the case against SGL Shipping dismissed with leave to seek costs, attorneys' fees and any other damages SGL Shipping may have suffered or any further relief which to this Court may seem just and equitable.


Dated: New York, New York
        October 22, 2007


                        Respectfully submitted,

                        NOURSE & BOWLES, LLP
                        Attorneys for Defendant
                        SGL SHIPPING LIMITED

                        By:  _____
                              Armand M. Paré, Jr. (AP-8575)
                              One Exchange Plaza
                              At 55 Broadway
                              New York, NY 10006
                              (212) 952-6200