```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CALDER SEACARRIER CORP.,                  07 Civ. 6520 (LAK)

                    Plaintiff,           SECOND AMENDED
          -against-                      VERIFIED COMPLAINT

VIKING MARINE S.A., SINORICHES
GLOBAL LTD. a/k/a SGL SHIPPING
LIMITED, and SGL SHIPPING LIMITED,

                    Defendants.
------------------------------------X
```



**PLEASE TAKE NOTICE** that Plaintiff, CALDER SEACARRIER CORP. ("CALDER"), by its attorneys, MAHONEY & KEANE, LLP, as and for a Second Amended Verified Complaint against Defendants, VIKING MARINE S.A. ("VIKING"), SINORICHES GLOBAL LTD. a/k/a SGL SHIPPING LIMITED ("SINORICHES/SGL") and SGL SHIPPING LIMITED ("SGL") alleges, upon information and belief, as follows:

1. This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is based upon 28 U.S.C. § 1333, as well as the Court's diversity, pendent, supplementary and ancillary jurisdiction.

2. Plaintiff is a legal entity duly organized and existing pursuant to the laws of a foreign country.

3. Defendant VIKING is a business entity organized and existing pursuant to the laws of a foreign country with offices and a place of business located at c/o PRIAMOS MARITIME S.A., 72-74, Marathonos Str., 16673 Panorama Voulas, Athens, Greece.

4. Defendant SINORICHES/SGL is a business entity organized and existing pursuant to the laws of a foreign country.

5. SGL is a trade name for, and is one-and-the same as, SINORICHES; but, in the alternative, would, upon information and belief, be a business entity organized and existing pursuant to the laws of a foreign country.

<u>AS AND FOR CLAIMS AGAINST DEFENDANT VIKING</u>

6. On or about June 6, 2007, CALDER, as Charterer, and VIKING, as owner, entered into a charter agreement for the use of the M/V VERA for service between ports China and Singapore to ports in the Mediterranean.

7. Plaintiff complied with each and every requirement imposed by the agreement between the parties.

8. But, on or about July 18, 2007, in repudiatory breach of the charter, Defendant VIKING removed the vessel from service under the charter to lift a cargo at Xingang for VIKING's own purposes.

9. Moreover, in further breach of the charter party, on or about July 6, 2007, July 11, 2007 and July 19, 2007, Defendant approached CALDER's shippers, including, <u>inter alia</u>, Defendant SINORICHES/SGL, and convinced them to avoid their obligations to CALDER and pay freight directly to VIKING.

10. Defendant VIKING wrongfully, willfully, negligently and/or fraudulently breached the terms of the subject charter agreement by, <u>inter alia</u>, failing to provide the said vessel, as per the terms of the charter agreement.

11. Defendant VIKING wrongfully, willfully, negligently, and/or fraudulently interfered with Plaintiff's right to enter into contracts relating to the use of the M/V VERA

12. As a result of VIKING's breach of the subject charter agreement and tortuous interference with Plaintiff's right to contract, Plaintiff has incurred, and will continue to incur, costs and expenses for which VIKING is liable under the terms of the charter agreement and at law.

13. Plaintiff has placed VIKING on notice of its claim that VIKING has breached the subject charter agreement and violated Plaintiff's rights under the law.

14. Despite Plaintiff's repeated demands, VIKING has failed to pay the Plaintiff's damages due and owing under the charter agreement and at law.

15. Net freight CALDER would have received from sub-contracting parties, including SINORICHES/SGL, Farmbridge, and MS Steel International, for carriages from Changshu, Dalian, Jintang, and Lianyngang to Ravenna, Aqaba, and Skikda, would have totaled $3,070,238.50.

16. CALDER's costs for those shipments total $150,663.00.

17. Net lump sum freight to VIKING totals $2,556,937.50.

18. Accordingly, CALDER's estimated lost profit amounts to $362,638.03.

19. In addition, claims from CALDER's contracting parties, as best as can presently be estimated, would amount to at least approximately $200,000.

20. Pursuant to the charter agreement, disputes are to be settled by arbitration, and arbitration between Plaintiff and VIKING is underway, accordingly.

21. Under the rules of such arbitration, interest, costs, and attorneys' fees are routinely awarded to the prevailing party.

22. English arbitrators are expected to find under English law that CALDER is entitled to aggravated or exemplary damages arising out of Defendant's tortious interference with Calder's contracts. Such damages are estimated to add an extra 10% to 15% to the underlying damages (approximately $80,000).

23. CALDER's English counsel estimates that solicitors and experts' fees for the arbitration would total around $250,000, and arbitrators' fees would run another $100,000.

24. Thus, as a result of VIKING's breach of the charter agreement and violation of Plaintiff's rights under the law, Plaintiff has sustained damages, and, as best as can now be estimated, Plaintiff expects to recover the following amounts, exclusive of interest, by way of arbitral award:

| | |
|---|---|
| Principal Claim | $721,286.31 |
| Attorneys' and Expert's Fees, | $250,000.00 |
| Arbitration Expenses | $100,000.00 |
| **Total** | **$1,071,286.31** |

25. Plaintiff notes that the above claim figures constitute estimates derived from the information currently available and reserves the right to amend or adjust same in the event that newly discovered facts demand such amendment.

26. Plaintiff sues on its own behalf and as agent and trustee on behalf of any other party who may now have or hereinafter acquire an interest in this action.

27. All conditions precedent required of Plaintiff in the aforesaid charter agreement have been performed.

### AS AND FOR A CLAIM AGAINTS DEFENDANT SINORICHES/SGL

28. On or about June 7, 2007, CALDER, as it was entitled to do by reason of its charter with VIKING, entered into a fixture with SINORICHES/SGL, for the shipment by SINORICHES/SGL of a cargo of steel products on board the M/V VERA.

29. Plaintiff complied with each and every requirement imposed by the agreement between the parties.

30. SINORICHES/SGL breached its contract of affreightment with Plaintiff, by failing to pay freight charges, as per the terms of the fixture.

31. SINORICHES/SGL wrongfully, willfully, negligently and/or fraudulently breached the terms of the subject contract of affreightment by, *inter alia*, failing to pay freight, demurrage, port fees and other associated costs.

32. As a result of SINORICHES/SGL's breach of the fixture agreement Plaintiff has incurred, and will continue to incur costs and expenses for which SINORICHES/SGL is liable under the terms of the charter agreement and at law.

33. Plaintiff has placed SINORICHES/SGL on notice of its claim that SINORICHES/SGL has breached the subject fixture agreement and violated Plaintiff's rights under the law.

34. Despite Plaintiff's repeated demands, SINORICHES/SGL has failed to pay the Plaintiff's damages due and owing under the contract of affreightment and at law.

35. Under the referenced fixture, SINORICHES/SGL incurred freight charges estimated at $1,529,360.53.

36. SINORICHES/SGL has paid $131,261.13 of the freight charges under the referenced fixture.

37. The balance of the freight currently due to Plaintiff from SINORICHES/SGL is $1,398,099.40.

38. Pursuant to the contract of affreightment, disputes are to be settled by arbitration, and arbitration between Plaintiff and SINORICHES/SGL has been commenced.

39. Under the rules of such arbitration, interest, costs, and attorneys' fees are routinely awarded to the prevailing party.

40. CALDER's English counsel estimate that solicitors and experts' fees for the arbitration would total around $250,000, and arbitrators' fees would run another $100,000.

41. As a result of SINORICHES/SGL's breach of the fixture agreement and violation of Plaintiff's rights under the law, Plaintiff has sustained damages and expects to recover by way of arbitral award, as best as can now be estimated, the following amounts, exclusive of interest:

| | |
|---|---|
| Principal Claim | $1,600,684.00 |
| Attorneys' and Expert's Fees, | $250,000.00 |
| Arbitration Expenses | $100,000.00 |
| **Total** | **$1,950,684.00** |

42. Plaintiff notes that the above claim figures constitute estimates derived from the information currently available and reserves the right to amend or adjust same in the event that newly discovered facts demand such amendment.

43. Plaintiff sues on its own behalf and as agent and trustee on behalf of any other party who may now have or hereinafter acquire an interest in this action.

44. All conditions precedent required of Plaintiff in the aforesaid contract of affreightment have been performed.

AS AND FOR A CLAIM, IN THE ALTERNATIVE, AGAINST SGL

45. At all pertinent times, it was CALDER's firm understanding that SINORCHES and SGL were one-and-the-same.

46. The English name of the charterer has been represented to CALDER alternatively and interchangeably as both SINORICHES and SGL.

47. However, the name in Chinese has always remained the same. "SGL" thus appears in English under the Chinese characters for SINORICHES. SGL's Chinese Business Registration Certificate itself spells only "SINORICHES" in Chinese, with "SGL" appearing in English below. This, in fact, is also how SGL appears in the Application for Funds Transfer for the

partial payment of freight with respect to the subject fixture, i.e. "SGL" in English just under "SINORICHES" in Chinese.

48. To the extent it may be asserted that SGL is nonetheless a separate entity, the funds transfer documentation would, at the very least, show that debts owed by SINORICHES were paid by SGL. And it is not common practice in the shipping industry for unaffiliated entities to make freight payments for one another.

49. Moreover, the person from SINORICHES with whom CALDER and SINORICHES's broker dealt most closely in connection with the fixture was Charlie Wang. And the signature on the SGL Funds Transfer Request matches previous examples of Mr. Wang's signature.

50. In an e-mail dated July 6, 2007, CALDER was even expressly advised by the broker who acted for the SINORICHES in connection with the VERA fixture that SINORICHES freight payments would be remitted by Mr. Wang "via his new company SGL Shipping Ltd."

51. Upon information and belief, therefore, if SGL is not the same company as SINORICHES, which is denied, then SINORICHES conducted business through SGL as an alter-ego.

52. SGL is an entity wholly or partly owned by SINORICHES.

53. SINORICHES uses SGL as a conduit to pay its debts and obligations and is otherwise an alter ego of SGL, and vice versa.

54. SGL is a shell corporation through which SINORICHES conducts business, and vice versa.

55. SGL has no separate, independent identity from SINORICHES, and vice versa.

56. SGL is the alter-ego of SINORICHES because SINORICHES dominates and disregards SGL's corporate form to the extent that SGL is actually carrying on the business and operations of SINORICHES, as if they were its own, or vice versa.

57. SGL acts as a paying agent, or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of SINORICHES and/or receives payments being made to SINORICHES, or vice versa.

58. SINORICHES and SGL are affiliated to such extent that SGL is now or will soon be holding assets belonging to SINORICHES, or vice versa.

59. SINORICHES and SGL are partners and/or joint venturers.

60. SGL is a successor in interest to SINORICHES, and therefore responsible for any and all debts incurred in the course of SINORICHES's business, including such debt underlying this Complaint, or vice versa.

61. As the alter-ego of SINORICHES, SGL is liable and responsible for the damages claimed by CALDER with respect to SINORICHES/SGL.

## AS AND FOR ALLEGATIONS IN SUPPORT OF RULE B ATTACHMENT

62. Defendants VIKING, SINORICHES, and SGL cannot be found, within the meaning of Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims, within this District, but, upon information and belief, Defendants have or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court held in the hands of garnishees including, but not limited to, Bank of America, Bank of New York, Citibank, HSBC Bank USA N.A., J.P. Morgan Chase, Standard Chartered Bank, Siam Commercial Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V. and/or DBS Bank Ltd, which are believed to be due and owing to Plaintiff.

63. For the purpose of obtaining personal jurisdiction over Defendants and securing Plaintiff's claim as described above, Plaintiff seeks and order from this Court directing the Clerk of the Court to issue process of maritime attachment and garnishment pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching any assets, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit freights, sub-freights, charter hire, sub-charter hire, and/or other assets belonging to, due or for the benefit of Defendants, including but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving

through, or within the possession, custody or control of banking institutions including but not limited to the aforesaid garnishees and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served.

WHEREFORE, Plaintiff prays:

A. That process in due form of law issue against Defendants VIKING, SINORICHES, and SGL, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B. That, since Defendants cannot be found in this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, the Court directs the Clerk of the Court to issue an order, pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including but not limited to the Bank of America, Bank of New York, Citibank, HSBC Bank USA N.A., J.P. Morgan Chase, Standard Chartered Bank, Siam Commercial Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., DBS Bank Ltd., and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served, in the amount of **$1,071,286.31 (VIKING) and $1,950,684.00 (SINORICHES and/or SGL)** to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and answer the matters alleged in the Complaint;

        C.    That the Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

        D.    That Plaintiff has such other and further relief as this Honorable Court may deem just and proper.

Dated:    New York, New York
           October 25, 2007

                Respectfully submitted,

                MAHONEY & KEANE, LLP.
                Attorneys for Plaintiff
                **CALDER SEACARRIER CORP.**

By: _____
     Garth S. Wolfson (GW 7700)
     111 Broadway, Tenth Floor
     New York, New York 10006
     (212) 385-1422

ATTORNEY VERIFICATION

STATE OF NEW YORK      :
                       : SS.:
COUNTY OF NEW YORK     :

GARTH S. WOLFSON, being duly sworn, deposes and says:

1. I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

2. I am the attorney of record for Plaintiff, CALDER SEACARRIER CORP., in this action. I am fully authorized to make this Verification on Plaintiff's behalf.

3. I have read the foregoing Second Amended Verified Complaint. and the contents thereof are true and accurate to the best of my knowledge, information and belief.

4. The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

5. The source of my knowledge is information and records furnished to me by the Plaintiff and its counsel, all of which I believe to be true and accurate.

Dated:   New York, New York
         October 25, 2007

_____
Garth S. Wolfson (GW 7700)

Sworn to before me this
25th day of October, 2007

_____
Notary Public

JORGE RODRIGUEZ
NOTARY PUBLIC
State of New York No. 02RO6128023
Qualified in New York County
Term Expires 06/06/2009