which there is a middle way open to the innocent party in that he is given a period of time in which to make up his mind whether he is going to affirm the contract or terminate. This point was well-expressed by Rix L.J. in *Stocznia Gdanska SA v Latvian Shipping Company (No.2)*[12] when he stated

"In my judgment, there is of course a middle ground between acceptance of repudiation and affirmation of the contract, and that is the period when the innocent party is making up his mind what to do. If he does nothing for too long, there may come a time when the law will treat him as having affirmed. If he maintains the contract in being for the moment, while reserving his right to treat it as repudiated if his contract partner persists in his repudiation, then he has not yet elected. As long as the contract remains alive, the innocent party runs the risk that a merely anticipatory repudiatory breach, a thing 'writ in water' until acceptance, can be overtaken by another event which prejudices the innocent party's rights under the contract—such as frustration or even his own breach. He also runs the risk, if that is the right word, that the party in repudiation will resume performance of the contract and thus end any continuing right in the innocent party to elect to accept the former repudiation as terminating the contract."[13]

The length of the period given to the innocent party in order to make up his mind will very much depend upon the facts of the case. The period may not be a long one because a party who does nothing for too long may be held to have affirmed the contract.[14] The length of time will also depend upon the time at which the innocent party's obligations fall due for performance. A contract remains in force until it has been terminated for breach so that a contracting party who has not elected to terminate the contract remains bound to perform his obligations unless the effect of the other party's breach is to prevent performance of the innocent party's obligation becoming due.[15]

**Affirmation.** Where the innocent party, being entitled to choose whether to treat the contract as continuing or to accept the repudiation and treat himself as discharged, elects to treat the contract as continuing, he is usually said to have "affirmed" the contract.[16] He will not be held to have elected to affirm the contract unless, first, he has knowledge of the facts giving rise to the breach,[17] and, secondly, he has knowledge of his legal right to choose between the

24–003

---

[12] [2002] EWCA Civ 889; [2002] 2 Lloyd's Rep. 436; *Astea (UK) Ltd v Time Group Ltd* [2003] EWHC 725 (TCC); [2003] All E.R. (D.) 212 (Apr).
[13] *ibid.* at [87].
[14] *cf. W.E. Cox Toner (International) Ltd v Crook* [1981] I.R.L.R. 443, 446 ("he is not bound to elect within a reasonable time or any other time"). See also the line of cases in which it has been held that mere delay by itself does not constitute affirmation (n.23 below).
[15] See Treitel *The Law of Contract* (11th edn, 2003), pp.855–856 and also paras 24–036 and 24–037.
[16] *Suisse Atlantique Société d'Armement Maritime SA v N.V. Rotterdamsche Kolen Centrale* [1967] 1 A.C. 361, 398; *Peyman v Lanjani* [1985] Ch. 457.
[17] *Matthews v Smallwood* [1910] 1 Ch. 777, 786; *U.G.S. Finance Ltd v National Mortgage Bank of Greece* [1964] 1 Lloyd's Rep. 446, 450; *Suisse Atlantique Société d'Armement Maritime SA v N.V. Rotterdamsche Kolen Centrale*, above, at 426; *Panchaud Frères SA v Etablissements General Grain Co* [1970] 1 Lloyd's Rep. 53, 57; *Kammins Ballrooms Co Ltd v Zenith Investments (Torquay) Ltd* [1971] A.C. 850; *Peyman v Lanjani*, above; *Yukong Line Ltd of Korea v Rendsberg Investments Corp. of Liberia* [1996] 2 Lloyd's Rep. 604, 607.

26-008     CHAP. 26—DAMAGES

situation arises when the defendant's breach of contract has in fact caused no loss to the claimant, but it may also arise when the claimant, although he has suffered loss, fails to prove any loss flowing from the breach of contract,[46] or fails to prove the actual amount of his loss.[47] A regular use of nominal damages, however, is to establish the infringement of the claimant's legal right, and sometimes the award of nominal damages is "a mere peg on which to hang costs."[48]

### (c) *Claims for an Agreed Sum*

26-009     **Distinction between claims for payment of an agreed sum and claims for damages.** There is an important distinction between a claim for payment of a debt and a claim for damages for breach of contract. A debt is a definite sum of money fixed by the agreement of the parties as payable by one party in return for the performance of a specified obligation by the other party or upon the occurrence of some specified event or condition[49]; damages may be claimed from a party who has broken his contractual obligation in some way other than failure to pay such a debt. (It is also possible that, in addition to a claim for a debt, there may be a claim for damages in respect of consequential loss caused by the failure to pay such a debt at the due date.[50]) The relevance of this distinction is that rules on damages do not apply to a claim for a debt, *e.g.* the claimant who claims payment of a debt need not prove anything more than his performance[51] or the occurrence of the event or condition[52]; there is no need for him to prove any actual loss suffered by him[53] as a result[54] of the defendant's failure to pay; the whole concept of the remoteness of damage[55] is therefore irrelevant; the law on penalties does not apply to the agreed sum[56]; the claimant's duty to mitigate his

---

[46] *Columbus & Co Ltd v Clowes* [1903] 1 K.B. 244; *Weld-Blundell v Stephens* [1920] A.C. 956; *Taylor & Sons Ltd v Bank of Athens* (1922) 91 L.J.K.B. 776; *James v Hutton and J. Cook & Sons Ltd* [1950] 1 K.B. 9; *Sykes v Midland Bank Executor and Trustee Co Ltd* [1971] 1 Q.B. 113. See below, paras 26-029 *et seq.*

[47] *Erie County Natural Gas and Fuel Co Ltd v Carroll* [1911] A.C. 105; *cf. Government of Ceylon v Chandris* [1965] 3 All E.R. 48; *cf. Tai Hing Cotton Mill Ltd v Kamsing Knitting Factory* [1979] A.C. 91, 106 (see above, para.26-007, text at n.41); *cf.* also *Dean v Ainley* [1987] 1 W.L.R. 1729.

[48] *Beaumont v Greathead* (1846) 2 C.B. 494, 499. But costs are in the discretion of the court, and sometimes a claimant who recovers nominal damages will not receive costs: *Anglo-Cyprian Trade Agencies Ltd v Paphos Wine Industries Ltd* [1951] 1 All E.R. 873, 874.

[49] *e.g. Alder v Moore* [1961] 2 Q.B. 57 (below, para.26-127); *Hyundai Heavy Industries Co Ltd v Papadopoulos* [1980] 1 W.L.R. 1129, HL (guarantee: see Vol.II, Ch.44); *Damon Compania Naviera SA v Hapag-Lloyd International SA* [1985] 1 W.L.R. 435, 449 (suing in debt to recover an unpaid deposit); *Jervis v Harris* [1996] Ch. 195. See below, para.26-118; Vol.II, Ch.41 (contracts of insurance).

[50] See below, paras 26-089—26-090. Interest may also be payable on a debt: below, paras 26-144 *et seq.*

[51] On the question when an action lies for the price under a contract for the sale of goods, see Vol.II, paras 43-386 *et seq.*

[52] See n.49, above.

[53] See above, paras 26-001, 26-008.

[54] On causation, see below, paras 26-029 *et seq.*

[55] See below, paras 26-044 *et seq.*

[56] See below, para.26-118.

18

loss does not generally apply[57]; and the claimant will usually be able to seek summary judgment.[58] The distinction may also be relevant where a contract provides for payment to be made by instalments; thus, under a hire-purchase agreement, a claim for arrears of instalments already due is a claim in debt quite distinct from a claim for damages for breach of the contract as a whole.[59] Under a contract for payment by instalments, no claim in respect of instalments due in the future may be brought as a claim for a debt, but if the party due to pay the instalments has committed a breach of his obligations which entitles the other party to terminate the contract, then, subject to the general rules on damages, an award of damages may be made in respect of the prospective loss of the future instalments, allowance being made for a discount on account of the earlier payment of a lump sum to be received under the judgment instead of the instalments spread over the future period.[60]

(d) *Liquidated and Unliquidated Damages*

**Liquidated and unliquidated damages.** The term liquidated damages is applied where the damages have been agreed and fixed by the parties (in respect of which the law has developed criteria for their validity[61]), or fixed by statute as in the case of damages against parties to a dishonoured bill of exchange.[62] Unliquidated damages is the term applied where the damages are at large and are to be assessed by the court; the rules as to remoteness of damage[63] are the main criteria for such damages.   26–010

Often the parties to a contract fix a sum as liquidated damages in the event of one specific breach, and leave the claimant to sue for unliquidated damages in the ordinary way if other types of breach occur.[64] Again, where there is provision for liquidated damages the claimant may, in appropriate cases, nevertheless elect to ask instead for an injunction to restrain a breach.[65]   26–011

---

[57] *White and Carter (Councils) Ltd v McGregor* [1962] A.C. 413. (See below, para.26–107.)
[58] CPR, Pt 24. A debt can be factored, viz. sold to a financial institution.
[59] *Overstone Ltd v Shipway* [1962] 1 W.L.R. 117, 123, 129. (See Vol.II, para.38–309; cf. Vol.II, paras 38–183—38–186, 38–337.)
[60] *Interoffice Telephones Ltd v Robert Freeman Co Ltd* [1958] 1 Q.B. 190; *Robophone Facilities Ltd v Blank* [1966] 1 W.L.R. 1428; *Lombard North Central plc v Butterworth* [1987] Q.B. 527 (below, para.26–123). *Stoeznia Gdanska SA v Latvian Shipping Co* [1998] 1 All E.R. 883, HL. On the question of the discount, see also *Overstone Ltd v Shipway*, above, (approved by HL in *Christopher Moran Holdings Ltd v Bairstow* [2000] 2 A.C. 172, 180, 184, 188) and below, para.26–135, between n.737 and n.738. On damages for prospective loss in general, see below, paras 26–013—26–015.
[61] Below, paras 26–109 *et seq*.
[62] Bills of Exchange Act 1882, s.57 (see Vol.II, para.34–120); *Re Rickett* [1949] 1 All E.R. 737.
[63] Below, paras 26–044 *et seq*.
[64] *e.g. Aktieselskabet Reidar v Arcos Ltd* [1927] 1 K.B. 352. See below, para.26–109.
[65] But the claimant cannot have both an injunction and liquidated damages in respect of a single breach: *Sainter v Ferguson* (1849) 1 Mac. & G. 286; *Carnes v Nesbitt* (1862) 7 H. & N. 778; *General Accident Insurance Co v Noel* [1902] 1 K.B. 377. cf. the position if there are different breaches: *Imperial Tobacco Co v Parslay* [1936] 2 All E.R. 515; *Elsley v J. G. Collins Insurance Agencies Ltd* (1978) 83 D.L.R. (3d) 1 (Sup.Ct. of Canada) (injunction granted to restrain future breaches of employee's covenant not to compete, together with damages in respect of past breaches). See also *Upton v Henderson* (1912) 28 T.L.R. 398.

# SCRUTTON

## ON

# CHARTERPARTIES

## and

# Bills of Lading

*Twentieth Edition*

BY

STEWART C. BOYD

*Of Trinity College, Cambridge, and of the Middle Temple;
One of her Majesty's Counsel*

ANDREW S. BURROWS

*Of the Middle Temple; Professor of English Law,
University College, London; Law Commissioner for England and Wales*

AND

DAVID FOXTON

*Of Magdalen College, Oxford, and of Gray's Inn*

LONDON
SWEET & MAXWELL
1996

Section I

## NATURE, VALIDITY AND CONSTRUCTION OF THE CONTRACT

### Article 1—Contracts of Affreightment

WHEN a shipowner, or person having for the time being as against the shipowner the right to make such an agreement, agrees to carry goods by water, or to furnish a ship for the purpose of so carrying goods, in return for a sum of money to be paid to him, such a contract is called *a contract of affreightment* and the sum to be paid is called *freight*.

Depending on the manner in which the ship is employed, the contract of affreightment may be contained in a *charterparty*[1] or evidenced by a bill of lading.[2] But the classical division into charterparties and bills of lading is not exhaustive. Contracts of affreightment may be contained in or evidenced by documents which do not strictly fall into either category: *e.g.* freight contracts,[3] berth-notes,[4] colliery guarantees,[4] mate's receipts,[5] non-negotiable receipts,[6] sea waybills,[7] ship's delivery orders,[8] through transportation documents,[9] and the "similar document of title" referred to in Article I(*b*) of the Schedule to the Carriage of Goods by Sea Act 1971.[10]

### Article 2—Employment as a General Ship

When the ship is put up for a particular voyage to carry the goods of any persons who may be willing to ship goods on her for that voyage, she is said to be "put on the berth" or employed as a *general ship*. After the goods are shipped, a document called a *bill of lading*[11] is issued, which

---

[1] See Art. 3, *post*.
[2] See Art. 2, *post*.
[3] See, *e.g. Associated Portland Cement v. Cory* (1915) 31 T.L.R. 442; *Bolckow, Vaughan v. Cia Minera* (1917) 86 L.J.K.B. 439; *Pacific Phosphate Co. v. Empire Transport Co.* (1920) 36 T.L.R. 750; *Cork Gas Consumers Co. v. Witherington R. Everett* (1920) 36 T.L.R. 599; *Larrinaga v. Soc. Franco-Americaine* (1923) 29 Com.Cas. 1; *Cie Tunisienne de Navigation v. Cie d'Armemente Maritime* [1971] A.C. 572.
[4] These are now obsolete (but see *N.V. Reederij Amsterdam v. President of India* [1960] 2 Lloyd's Rep. 82). Both are discussed in the 17th ed., pp. 2–3.
[5] See Art. 91.
[6] See p. 458, *post*.
[7] See Arts. 2 and 16.
[8] *Ibid.*
[9] See Arts. 179 and 181.
[10] See p. 423 *post*. See also Art. 1.7 of the Hamburg Rules, p. 559, *post*.
[11] Also once called a *bill of loading*; the first use given in the N.E.D. is in 1599. A bill of lading, like a charterparty, used to be by "Indenture". See an example of 1538 ("This bylle indented and made, etc.") in Marsden, *Select Pleas of the Admiralty Court* (Selden Society, 1892), Vol. I, p. 61.

1