```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CALDER SEACARRIER CORP.,                    07 Civ. 6520 (LAK)

                    Plaintiff,
        -against-

VIKING MARINE S.A. and SINORICHES
GLOBAL LTD, a/k/a SGL SHIPPING
LIMITED, and SGL SHIPPING LIMITED,

                    Defendants.
------------------------------------X
```

 

**MEMORANDUM OF LAW**
**IN OPPOSITION TO MOTION**

 

Garth S. Wolfson (GW 7700)

    Of Counsel

 

MAHONEY & KEANE, LLP
Attorneys for Plaintiff
CALDER SEACARRIER CORP.
111 Broadway, Tenth Floor
New York, NY 10006
(212) 385-1422

TABLE OF CONTENTS

*Page*

COUNTER-STATEMENT OF FACTS..................................1

ARGUMENT....................................................3

POINT I.      CALDER HAS ALLEGED A PRIMA FACIE
              MARITIME CLAIM................................3

CONCLUSION..................................................6

## COUNTER-STATEMENT OF FACTS

By way of background, the instant motion represents the third attempt by defendants SINORICHES GLOBAL LTD. (SINORICHES) and SGL SHIPPING LIMITED (SGL) to vacate the attachment in this case for failure to state a <u>prima facie</u> maritime claim. Of the three, this is defendant SINORICHES's second motion, even though only SGL funds have been attached and SINORICHES and SGL claim to be unrelated entities. In any event, it should be noted that the Court has already ruled on two prior occasions that the pleading is sufficient in alleging breach of a maritime contract.

SINORICHES now misconstrues the contents of CALDER's pleading. The complaint alleges that "Defendant VIKING removed the vessel from service under the charter." (Second Amended Complaint, Exhibit A to Wolfson Declaration, at ¶ 8). Only to that extent was the vessel not provided. Nowhere does the complaint allege that the vessel had never been provided at all, <u>i.e.</u> before being subsequently withdrawn. The complaint even alleges that "SINORICHES/SGL has paid $131,261.13 of the freight charges under the fixture," <u>id.</u> at ¶ 36, and that "SINORICHES/SGL breached its contract of affreightment with Plaintiff, by failing to pay freight charges, as per the terms of the fixture," only as to the

balance. Id. at ¶¶ 30-31. Such partial payment would never have occurred if loading had not commenced. As discussed in the Declaration submitted by CALDER's solicitors, the fact that the cargo had been loaded renders SINORICHES's argument completely misplaced under English law. (Sharma Declaration, Exhibit B to Wolfson Declaration).

Moreover, the complaint makes clear that "Defendant approached CALDER's shippers, including, inter alia, Defendant SINORICHES/SGL, and convinced them to avoid their obligations to CALDER and pay freight directly to VIKING." Id. at ¶ 9. SINORICHES is thus alleged to be complicit in the events giving rise to the withdrawal of the vessel, essentially participating in a scheme to "cut out the middle man." Indeed, if this had merely been a situation where a vessel became unavailable for use through no fault of SINORICHES, CALDER would ordinarily have been afforded the opportunity to cure the matter by substituting a vessel with similar capacities. But that's not what happened here. Any purported inability to perform the fixture resulted from SINORICHES's own breach of its agreement with CALDER.

ARGUMENT

**POINT I.   CALDER HAS ALLEGED A <u>PRIMA FACIE</u> MARITIME CLAIM.**

As recently clarified by the Second Circuit in <u>Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.</u>, 460 F.3d 434 (2d Cir. 2006), the Court need only look to the pleadings to determine whether the <u>prima facie</u> requirements of Rule B have been met. <u>Id.</u>; <u>Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transp. N.V.</u>, No. 07 Civ. 3076 (LAP), 2007 U.S. Dist. LEXIS 50260, *9 (S.D.N.Y. Jul. 6, 2007) ("'[O]f the courts in this district to have considered the issue, the majority have interpreted *Aqua Stoli* to require the application of the *prima facie* standard when considering the adequacy of the claim asserted in the context of a maritime attachment.'") (quoting <u>OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.</u>, No. 06-9441, 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. Jun. 26, 2007) (citing cases)); <u>see also</u>, <u>Ad-Hoc Committee of the Baruch Black and Hispanic Alumni Assoc. v. Bernard M. Baruch College</u>, 835 F.2d 980 (2d Cir. 1987) ("[Under Rule 12,] a court should not dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting <u>Conley v.

Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

"The existence *vel non* of a valid maritime claim for the purposes of a *Rule B* attachment turns upon the applicable substantive law, in this case the law of contract." Sonito Shipping Co. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2007) ("And that leads to a consideration of English law because, as noted *supra*, the parties agreed in the charter party that it shall be governed by and construed in accordance with English law.") (citing Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla, 966 F.2d 613, 615 (11th Cir. 1992)).

Aside from unrelated boilerplate on standing, SINORICHES has provided no law whatsoever on the question of whether a valid claim for freight may be stated under the circumstances of this case.

But the Declaration submitted by CALDER's solicitors makes clear that the allegations certainly do state valid causes of action under English law. See, generally, Sharma Declaration, Exhibit B to Wolfson Declaration. CALDER had every right to sublet the vessel under its charter with VIKING. The vessel having then been presented to SINORICHES and the cargo loaded, the freight became due and owing as a

debt, not subject to offset, regardless of subsequent events. And the charter was not terminated by CALDER; it was breached by SINORICHES. Accordingly, an allegation that a vessel was withdrawn from service under a head charter does not necessarily mean that no claim can be stated for breach of the sub-charter. The facts in this case, in particular, would, if proven, readily state a cognizable claim for damages.

Indeed, by agreeing to breach its fixture with CALDER and pay freight directly to VIKING, SINORICHES itself caused the vessel to be withdrawn by VIKING. Obviously, there is no precedent for allowing SINORICHES's own breach of contract and tortious conduct to excuse its performance under the fixture.

And, all of the above notwithstanding, SINORICHES continues to make fact-driven arguments on the merits that should be the subject of the London arbitration, not Rule B proceedings. If SINORICHES believes CALDER's position is erroneous, SINORICHES can readily try to get the arbitration claim dismissed. That would necessarily lead to vacatur of the attachment securing the results of that arbitration. But the pleading in New York need only allege a *prima facie* maritime claim. The intricacies of SINORICHES's conduct in depriving CALDER of the benefit of its contracts are simply not an appropriate area of inquiry in this proceeding and are

best pursued in the course of the arbitration in which SINORICHES is already actively engaged.

**CONCLUSION.**

WHEREFORE, plaintiff, CALDER SEACARRIER CORP., respectfully urges the Court to deny SINORICHES's motion and grant to CALDER such other and further relief as this Honorable Court may deem just and proper.

Dated:   New York, New York
         January 7, 2008

> Respectfully submitted,
>
> MAHONEY & KEANE, LLP
> Attorneys for Plaintiff
> CALDER SEACARRIER CORP.
>
> By: _____
> Garth S. Wolfson (GW 7700)
> 111 Broadway, Tenth Floor
> New York, New York 10006
> (212) 385-1422
> Our File No. 12/3437